Douglas J. Pick
Eric C. Zabicki
**PICK & ZABICKI LLP**
Counsel to Plaintiff Inna Khiterer
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| LOTHAR KROLL, ANDREAS KROLL, INNA KHITERER and SERGEI LEONTEV, individually and derivatively as shareholders of 440 WEST 164th STREET HDFC, | State Court Index No. 653885/2014 Supreme Court of the State of New York, County of New York |
| Plaintiff, | |
| -against- | Civil Case No.15-cv-_____ |
| 440 WEST 164th STREET HDFC, FIA 164th ST HOLDINGS LLC a/k/a FIA 164 HOLDINGS LLC, SAC 4902071714, LLC, MARK SCHWARTZ, DAVID GOLDWASSER, CITY OF NEW YORK, | **NOTICE OF REMOVAL** |
| Defendants. | |

-----------------------------------------------------------------x

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

   **PLEASE TAKE NOTICE** that plaintiff Inna Khiterer ("Khiterer"), by and through her

undersigned counsel, and pursuant to 28 U.S.C. §1452 and Federal Rule of Bankruptcy Procedure 9027,

hereby removes the action described herein to the United States District Court for the Southern District

of New York (the "District Court"), for subsequent referral thereof to the United States Bankruptcy

Court for the Southern District of New York (the "Bankruptcy Court"), and states as follows:

   1.     By way of background, since its formation in 1982, defendant 440 West 164th

Street Housing Development Fund Corporation (the "HDFC") has served as a housing cooperative for

the purposes of owning and maintaining a 20 unit apartment building located at 440 West 164th Street,

New York, New York 10032 (the "Building"). Khiterer and the other plaintiffs in the above-captioned action (the "Action") hold shares concerning certain apartment units within the Building (collectively, "Plaintiffs").

2.        In 2000, and as a result of the HDFC's failure to remain current on certain of its real property tax obligations, the City of New York commenced an *in rem* proceeding against the HDFC in the Supreme Court of the State of New York, County of New York (the "State Court"), seeking to foreclose a tax lien against the Building. Additionally, by Order of the State Court dated February 28, 2014, and pursuant to Article 7-A of the Real Property Actions and Procedures Law, an administrator was appointed with regard to the Building (the "7A Administrator") for the purposes of remedying certain conditions which allegedly threatened the health and safety of the occupants of the Building.

3.        After the appointment of the 7A Administrator, and with the foreclosure of the tax liens asserted against the Building by the City of New York on the horizon, Plaintiffs (among other owners of apartments within the Building) all decided to sell their apartment units rather than remain in the Building. Agreements were subsequently entered into with certain of the defendants in the Action (collectively, "Defendants") whereby, among other things, said Defendants would purchase five (5) fully renovated apartments, would assume a certain loan made to the HDFC and would provide the HDFC with funds needed to make necessary repairs to the Building.

4.        On December 18, 2014, the Plaintiffs commenced the Action in the State Court (Index No. 653885/2014) against the Defendants. A copy of the Summons and Verified Complaint with regard to the Action is attached hereto as *Exhibit "A"*. By way of the Action, Plaintiffs had sought money damages, specific performance and declaratory relief based upon certain of the Defendants' breach of their obligations to Plaintiffs and the HDFC under the various agreements between and among them. Specifically, and among other things, the Defendants at issue had failed to close on the purchase

of two (2) of the five (5) apartment units (which was a condition precedent to the validity of said Defendants' previous purchase of the other three (3) units), failed to pay the real estate tax liens held by the City of New York against the Building, failed to fund the rehabilitation of the Building, and failed to pay certain maintenance amounts due in connection with the five (5) apartments that were to be purchased, as the Defendants at issue had agreed with Plaintiffs. Plaintiffs further asserted that certain of Defendants had improperly voted themselves in as members of the HDFC's board of directors in contravention to the HDFC's certificate of incorporation and corporate by-laws.

5. Simultaneously with their commencement of the Action, Plaintiffs: (a) filed a Notice of Pendency against the Building with regard to the claims asserted in the Action; and (b) moved by order to show cause for a preliminary injunction enjoining Defendants from undertaking and/or directing Defendants to undertake certain actions with regard to, among other things, the Building and/or the apartment units at issue (the "Injunction Motion").

6. Defendants FIA 164 Holdings LLC, SAC 492071714, LLC, Mark Schwartz and David Goldwasser filed answers denying the material allegations of Plaintiffs' claims for relief. Copies of said answers are attached hereto as *Exhibits "B"* and *"C"*. By way of its answer, defendant FIA 164 Holdings, LLC also asserted counterclaims against Plaintiffs. A copy of Plaintiffs' reply to said counterclaims is attached hereto as *Exhibit "D"*. The HDFC appeared in the Action and filed a motion seeking to dismiss Plaintiffs' complaint alleging that a defense founded upon documentary evidence existed, that Plaintiffs lacked the capacity to sue and that the complaint failed to state a cause of action. A copy of the HDFC's motion, without exhibits, is attached hereto as *Exhibit "E"*. Defendant City of New York was subsequently dismissed from the Action by stipulation. Defendant Riverside Abstract, LLC was subsequently dismissed from the Action upon its cross-motion for dismissal.

7.     On March 31, 2015, and for the purposes of staying a foreclosure sale of the Building to satisfy the tax liens held by the City of New York, the HDFC filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court, Case No. 15-20003 (RDD) and an Order for Relief was entered. The HDFC is continuing to manage its property and affairs as debtors-in-possession and no trustee, examiner or committee has been appointed as of the date hereof.

8.     By Order dated April 6, 2015, the State Court severed the Action as to the HDFC. By Decision and Order dated April 15, 2015, a copy of which is attached hereto as *Exhibit "F"*, the State Court, among other things, denied the Injunction Motion. On May 8, 2015, Plaintiffs filed a Notice of Appeal from said Decision and Order to the Appellate Division, First Department. Said appeal has not been perfected as of the date hereof.[1]

9.     On May 18, 2015, Khiterer, individually and derivatively on behalf of the HDFC, commenced an adversary proceeding in the Bankruptcy Court (Adv. Proc. No. 15-08276 (RDD)) against the HDFC, FIA 164 Holdings LLC and Mark Schwartz seeking a declaration that certain alleged elections of members to the HDFC's board of directors at a special meeting of the shareholders of the HDFC on November 10, 2014 are invalid, are a nullity and void ab initio and directing that an election of members of the HDFC's board of directors be held in accordance with the HDFC's corporate by-laws.

10.     Khiterer respectfully submits that the adjudication of the matters at issue in the Action will affect the assets and administration of the HDFC's bankruptcy estate. As such, this Court, and, as an adjunct thereof, the Bankruptcy Court, has jurisdiction over the Action pursuant to 28 U.S.C. §§1334 and 1452, and Federal Rule of Bankruptcy Procedure 9027, as a matter related to the HDFC's

---

[1] By way of this Notice of Removal, Khiterer is not removing the appeal pending before the Appellate Division, First Department, to the District Court or Bankruptcy Court.

bankruptcy case. The Action is also within the Bankruptcy Court's "core" jurisdiction within the meaning of 28 U.S.C. §157(b)(1) and (2). In the event that the Action is deemed to be "non-core", Khiterer consents to the entry of final orders and judgments by the Bankruptcy Court. Therefore, the removal of the Action to this Court is proper.

11.     Additionally, in the event that this Court does not enter such an Order *sua sponte*, Khiterer respectfully requests that the Action be referred to the Bankruptcy Court to be heard in the context of the HDFC's chapter 11 bankruptcy case.

12.     Khiterer will promptly file a copy of this Notice of Removal with the Clerk of the State Court and will promptly file copies of all process, pleadings and orders with regard to the Action with the Clerk of this Court and/or the Bankruptcy Court as may be directed.

**WHEREFORE**, Khiterer respectfully requests that this action proceed before this Court as an action properly removed and for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       May 20, 2015

                                    **PICK & ZABICKI LLP**
                                    Counsel to Plaintiff Inna Khiterer

By:                                               
                                    Douglas J. Pick
                                    369 Lexington Avenue, 12th Floor
                                    New York, New York 10017
                                    (212) 695-6000

EXHIBIT "A"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------X

LOTHAR KROLL,, ANDREAS KROLL, INNA KHITERER
and SERGEI LEONTEV, individually and
derivatively as shareholders of
440 WEST 164TH STREET HDFC;

Index No.          /14

                          Plaintiffs,

Plaintiff designates New York
County as the Place of trial.

          -against-

The basis of venue is the situs
principal place of business of
Plaintiffs

440 WEST 164TH STREET HDFC; FIA 164TH
ST HOLDINGS LLC a/k/a FIA 164 HOLDINGS LLC;
SAC 4902071714, LLC, MARK SCHWARTZ; DAVID
GOLDWASSER; CITY OF NEW YORK;

**SUMMONS**

                          Defendants.

---------------------------------------------------------X

**TO THE ABOVE NAMED DEFENDANTS:**

        **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to

serve a copy of your answer, or, if the complaint is not served with this summons, to

serve a notice of appearance, on the Plaintiffs' Attorneys within twenty (20) days after

the service of this summons, exclusive of the day of service (or within thirty (30) days

after service is complete if this summons is not personally delivered to you within the

State of New York); and in case of your failure to appear or answer, judgment will be

taken against you by default for the relief demanded in the complaint.

Dated: New York, New York

        December 18, 2014

                                        Yours, etc,
                                        BEDFORD MANTIA LLP

                                        By: James C. Mantia, Esq.
                                        *Attorneys for the Plaintiffs*
                                        1 East 40th Street, Suite 3307
                                        New York, New York 10016
                                        (212) 257-5843

## SERVICE LIST

440 WEST 164TH STREET HDFC
C/O Secretary of State
Legal Services Division
41 State St.
Albany, New York 12231

FIA 164TH ST. HOLDINGS LLC a/k/a FIA 164 HOLDINGS LLC
C/O Secretary of State
Legal Services Division
41 State St.
Albany, New York 12231

SAC492071714, LLC
C/O Secretary of State
Legal Services Division
41 State St.
Albany, New York 12231

RIVERSIDE ABSTRACT LLC
Suite 208
3839 Flatlands Avenue
Brooklyn, New York 11234

MARK SCHWARTZ
115 Broadway
Suite 302
New York, New York 10006

DAVID GOLDWASSER
115 Broadway
Suite 302
New York, New York 10006

CITY OF NEW YORK
c/o Corporation Counsel,
100 Church Street,
New York, New York 1007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
LOTHAR KROLL,INNA KHITERER, ANDREAS KROLL,
and SERGEI LEONTEV, individually and
derivatively as shareholders of
440 WEST 164TH STREET HDFC;

                                                    Index No.          /14

                    Plaintiffs,

          -against-
                                                    **COMPLAINT**

440 WEST 164TH STREET HDFC; FIA 164TH ST
HOLDINGS LLC a/k/a FIA 164TH HOLDINGS LLC;
SAC 492071714, LLC; MARK SCHWARTZ; DAVID
GOLDWASSER; RIVERSIDE ABSTRACT, LLC;
CITY OF NEW YORK; and


                    Defendants.
-----------------------------------------------------------------X

          The Plaintiffs, INNA KHITERER, ANDREAS KROLL, LOTHAR KROLL

and SERGEI LEONTEV, by their attorneys, as and for their complaint against the

Defendants, allege as follows:

                         **NATURE OF THE ACTION**

          1.     This proceeding involves the breach of an agreement between FIA

164 St Holdings LLC  and Plaintiffs to buy from individual plaintiffs five fully renovated

cooperative apartments  and simultaneous conveying to SAC 492071714, LLC  a loan

to the HDFC held by Shanghai Holdings, LLC

          2.     As part of the transaction the Defendants also agreed to  provide

funds for the cooperative for making necessary repairs to the building as part of

assuming  the obligation of the  lender.

          3.     However, instead the Defendants failed to honor their obligations

and instead conspired to foreclose upon the note, seek default interest on the mortgage

and to otherwise acquire Plaintiffs shares to facilitate their taking control of the board of the residential cooperative HDFC

4.    .Plaintiffs agreed to first sell three apartments (Apartment #31, #42 and #1) for significantly under market value under condition that FIA 164 Holdings LLC (purchaser of the units) (hereafter "FIA") and to SAC 492071714, LLC a mortgage on the property(assignee of the mortgage from Shanghai Holdings)(hereafter "SAC") so that FIA and SAC would do the following:

a.    Pay real estate taxes owed by the cooperative
b.    Secure removal of 7A Administrator by advancing funds necessary to do repairs.

5.    This would benefit the Plaintiffs as it would increase the value of the other two remaining apartments that the Defendant agreed to purchase at market value.

6.    The additional consideration received for the sale of the remaining two apartments would be shared amongst the Plaintiffs to offset the reduced sale price of the first three apartments. After the sale of the first three apartments, Defendants have not provide any funds to satisfy the existing tax lien putting the building at risk for being foreclosed upon.

7.    In addition, FIA has also not paid monthly maintenance to the court appointed 7A Administrator during the pendency of the transaction as they have expressly agrred to do and SAC failed to provide funds available to the cooperative pursuant to the mortgage. Moreover, *FIA and SAC have not made any motions* to remove 7A Administrator. In addition, FIA and or Mark Schwartz have not paid maintenance to court appointed 7A Administrator depriving court the appointed Administrator from funds necessary to operate the building and pay its expenses.

8.    At closing, FIA deposited into escrow $125,000 with Defendant Riverside Abstract LLC (hereafter "Riverside") to ensure its performance.  As per the terms of the

escrow agreement entered into by the parties the $125,000 was to be unconditionally released at the earlier of the removal of the 7A or December 1, 2014.

9. Riverside has refused to release the $125,000 being held in escrow funds although such was duly demanded.

10. Further after closing, FIA through Mark Schwartz, used the proxies for the shares of Khiterer and Leontev to call a special meeting and to get themselves elected as members of the board of directors for the HDFC.

## THE PARTIES

11. That Plaintiff, INNA KHITERER (hereafter "INNA"), at all relevant times hereinafter mentioned, was and still is an individual who is domiciled in the State of Pennsylvania.

12. At all relevant points alleged herein, INNA was and still is a shareholder of 440 WEST 164TH STREET HDFC (hereafter "HDFC"), owner of Apartment 32 of the building located at 440 West 164TH Street, New York, New York 10032 (hereafter "building") and was contract vendee of Apartment 42 of the building. (collectively hereafter "INNA APTS")

13. That Plaintiff, ANDREAS KROLL (hereafter "ANDREAS"), at all times hereinafter mentioned, was and still is an individual who is domiciled in the State of New York.

14. At all relevant points alleged herein, ANDREAS was a shareholder of the HDFC and owner of Apartment 31 of the building.

15. That Plaintiff, LOTHAR KROLL (hereafter "LOTHAR"), at all times hereinafter mentioned, was and still is an individual who owned a cooperative apartment located in the State of New York, County of New York.

16. At all relevant points alleged herein, LOTHAR was a shareholder of the

HDFC and owner of Apartment 1 of the building.

17.    That Plaintiff, SERGUEI LEONTEV (hereafter "SERGUEI"), at all relevant times hereinafter mentioned, was and still is an individual who is domiciled in the State of New York, County of New York.

18.    At all relevant points alleged herein, SERGUEI was a shareholder of the HDFC and owner of Apartment 44 of the building.

19.    Upon information and belief, Defendant 440 WEST 164TH STREET HDFC (hereafter "HDFC") is a residential cooperative formed on or about December 28, 1982.

20.    The HDFC is a domestic co-operative corporation whose principal place of business is in the State of New York, County of New York.

21.    Upon information and belief, Defendant FIA 164 ST HOLDINGS LLC a/k/a FIA 164 HOLDINGS LLC (hereafter "FIA") is a domestic limited liability company formed under the laws of the State of New York.

22.    Upon information and belief, FIA's principal place of business is located in the State of New York, County of New York.

23.    Upon information and belief, Defendant SAC 492071714, LLC (hereafter "SAC") is a domestic limited liability company formed under the laws of the State of New York.

24.    Upon information and belief, SAC's principal place of business is located in the State of New York, County of New York.

25.    Upon information and belief, Defendant RIVERSIDE ABSTRACT LLC (hereafter "RIVERSIDE") is a domestic limited liability company formed under the laws of the State of New York.  Upon information and belief, RIVERSIDE's principal place of business is located in the State of New York, County of Kings.

26.    Upon information and belief, RIVERSIDE's principal business is that of a

title company.

27.     Upon information and belief, Defendant MARK SCHWARTZ (hereafter "SCHWARTZ") is an individual who is domiciled in the State of New Jersey, or whose principal place of business is located in the State of New York.

28.     Contracts between SAC and HDFC and FIA and plaintiffs where entered in the state of New York.

29.     Upon information and belief, SCHWARTZ is a member and principal of FIA and is responsible for the day to day operation of FIA.

30.     Upon information and belief, Defendant DAVID GOLDWASSER (hereafter "GOLDWASSER") is an individual who is domiciled in the State of Florida, or whose principal place of business is located in both state of Florida and the State of New York.

31.     Upon information and belief, GOLDWASSER is a member and principal of SAC and is responsible for the day to day operation of SAC.

32.     Upon information and belief, Defendant CITY OF NEW YORK, is a municipality and/or governmental body who governs the City of New York, County of New York and is the party to whom the HDFC pays taxes.

33.     Upon information and belief, the Defendant City of New York is a necessary party as they are a lien holder on the property owned by the HDFC.

34.     Upon information and belief GLORIA HOPSON is the court appointed 7A Administrator for the building (hereafter "HOPSON"), and her principal place of business is located in the State of New York, County of New York.

35.     Upon information and belief, HOPSON was appointed to manage and operate the building pursuant to the order of the Hon. Cheryl Gonzalez dated February 28, 2014 (hereafter "7A ORDER") pursuant to Article 7-A of the Real Property Actions and Procedures Law.

36.     Pursuant to the terms of the 7A ORDER, HOPSON is directed by the court to collect the monthly maintenance from the shareholders of the HDFC and to correct any conditions which are dangerous to the life, health, or safety of the occupants in the building.

## RELEVANT FACTS WITH RESPECT TO THE FORMATION OF THE HDFC

37.     Plaintiff repeats and reiterates paragraphs one (1) through thirty six (36) as if more fully set forth herein.

38.     The HDFC is housing Cooperative Corporation formed on or about December 28, 1982 to own and maintain the building.

39.     Upon information and belief at the time the HDFC formed and the deed was conveyed for the building, the HDFC made various covenants in the deed that was conveyed by the City of New York which ran with the land.

40.     Upon information and belief, upon transfer of title by the City of New York the HDFC assumed management and operation of the building.

41.     At the formation of the co-operative the HDFC enacted certain By-Laws for the cooperative corporation with respect to its operation for the maintenance of the building.

42.     Pursuant to Article IV, Section one (1) of the By-Laws for the HDFC, a board of directors was to be formed for the HDFC. The By-Laws specifically state that only a "shareholder" over the age of eighteen (18) is eligible to serve as Board member.

43.     Pursuant to Article V, Section one (1) of the By-Laws for the HDFC, an officers of the corporation also have to be shareholders over the age of eighteen (18).

44.     The By-Laws provide in Article IV, Section eight (8) that in order to be eligible to vote for Directors and Officers that a shareholder may not be more than two

months delinquent in payments due to the Corporation.

45. Article XII, Section 1 of the By-Laws provide that the By-Laws may only be amended or repealed by a majority vote of eligible shareholders provide that the proposed amendment be provided in the Notice of Meeting.

46. Article X, Section 4 of the By-Laws provide that an officer or director of the HDFC may only enter into a contract with the HDFC upon full disclosure and only if approved by majority vote of disinterested directors of the board or alternatively, by a majority of the shareholders.

## THE DECLINE OF THE BUILDING

47. Plaintiffs repeat and reiterate the allegations of paragraphs one (1) through forty six (46) as more fully set forth herein.

48. The HDFC began to experience fiscal problems in 2000.

49. In 2000, there were many shareholders of the HDFC who were in arrears more than two months.

50. The HDFC failed to pay its property taxes and the City of New York placed a tax lien on the building.

51. The City of New York thereafter commenced an in rem tax foreclosure action against the HDFC in the Supreme Court of the State of New York under number 58000/00.

52. Notwithstanding the fact that the proceeding was dormant for many years within the last year the City of New York began to continue to pursue the proceeding

53. The building is presently in immediate danger of being foreclosed upon in the context of the Tax Lien Foreclosure.

54. Upon information and belief, the HDFC is not presently engaged in defending the foreclosure action.

55.     Upon the sale of the building in the foreclosure proceeding, the residential cooperative will be dissolved by operation of law and the building will cease to be a cooperative.

56.     The shareholders of the building will lose the value of their investment and equity in their apartments and the shareholders will lose their status as shareholders of the building as by operation of law they would revert to tenants.

57.     Further due to numerous violations being placed on the property and because the building is in need of major repairs, HPD commenced an action under index number 13180/12 (hereafter "7A action") seeking the appointment of a 7A administrator to rehabilitate the conditions which threatened the health and safety of the occupants of the building.

58.     At the time the 7A action was commenced Plaintiff Inna Khiterer, Lothar Kroll, and the former shareholder Mitchell St Clair were members of the board of the HDFC.

59.     Plaintiffs elected after approval from the majority of the board members to retain counsel to defend the 7A proceeding.

60.     In order to raise the funds needed to rehabilitate the building and to avoid the appointment of 7A Administrator, Plaintiff INNA obtained financing for the building.

61.     The cooperative was unable to secure financing from banks or institutional lenders due to the City of New York's Tax Lien and because of the large amount of maintenance arrears from the shareholders.

62.     Inna then secured the loan from Shanghai Holdings LLC a limited liability company in which she was a member. The loan was for $150,000 and it was supposed to be used by the HDFC to pay outstanding liens, judgments and to address some of the major health and safety conditions which plagued the building and for attorney's

fees.

63.     As provided by the terms of the By-Laws stated above, INNA fully
disclosed to the board that the loan would be made by Shanghai Holdings LLC..

64.     Thereafter a majority of the disinterested board members voted to approve
the resolution to accept the loan for the HDFC in full compliance with the terms of the
By-Laws and approval of the corporation's counsel.

65.     After the trial in the 7A action, the court granted the Petitioner HPD's
application for the appointment of Hopson as 7A Administrator of the building.

## THE PLAINTIFFS ATTEMPTS TO TRANSFER THEIR APARTMENTS

66.     After the appointment of the 7A administrator, Plaintiffs decided to sell
their apartments rather than remain in the building.

67.     Plaintiffs after months of looking for prospective purchasers connected
with Defendants Schwartz and Goldwasser.

68.     The Plaintiffs, through negotiations conducted largely by Plaintiff INNA,
came to an agreement with Defendants Schwartz and Goldwasser where they agreed
to purchase Plaintiffs apartments and to purchase Plaintiff INNA's interest in Shanghai
Holdings LLC who held the mortgage and Shanghai's interest in a commission
agreement with the HDFC.

69.     Defendant Schwartz formed a company, Defendant FIA, in order to
purchase the shares and ownership interest in Plaintiffs apartments.

70.     Defendant Goldwasser agreed to purchase the interest of Shanghai
Holdings LLC.

71.     Defendant Goldwasser then formed Defendant SAC for the purposes of
purchasing the mortgage and commission agreement.

72.     Due to the fact that the building was fighting a large tax lien and had a 7A

Administrator in place, Plaintiffs' apartments significantly lowered in value.

73.     Where normal market value for Plaintiffs apartments approximately ranged from $375,000-$425,000 depending if the apartment was a two bedroom to four bedroom apartment, the Plaintiffs' apartments were because of the 7A appointment and tax lien were valued significantly less (hereafter "reduced market rent").

74.     The agreement reached between Schwartz, Goldwasser, FIA, and SAC (hereafter "purchasers") and Plaintiffs provided that Goldwasser and/or SAC would purchase the note from Shanghai and FIA /or Schwartz's purchase of the Plaintiffs' apartments.

75.     The purchasers are sophisticated investors who are knowledgeable of real estate in the area and as to the risks entailed in purchasing the Plaintiffs apartments. In addition, purchasers signed Disclosure as to the cooperative and have agreed to purchase apartments "AS IS".

76.     The agreement reached between the purchasers and Plaintiffs provided that Schwartz and/or FIA would first purchase shares of Apartments 31, 1, and 42 at the reduced market value subject to the later purchase of apartments 32 and 44 at normal market value for these two apartments.

77.     The Purchasers agreed that for the period between the first and second closings that they would pay the maintenance for all five apartments - # 1, #32, #44, #42 and #44.

78.     The agreement reached between the Plaintiff and purchasers further required that Purchaser to provide sufficient funds to the HDFC to rehabilitate the building so that it could ask the court to remove the 7A Administrator and pay real estate taxes in tax lien foreclosure which will bring the apartments #32 and #44 to market value

79. The agreement provided that after removal of the 7A administrator, the purchasers would then close on the purchase of the shares of the remaining two apartments (32 and 44) for the market price of such apartment. Further SAC's vesting of rights to Shanghai's Mortgage was contingent upon closing of apartment #32 and #44 at market value.

80. The first closing for the shares of Apartments 31, 1, and 42 occurred on August 4, 2014.

81. The stock certificates of Apartments 31, 1, and 42 were delivered to FIA and/or Schwartz at the closing.

82. FIA and/or Schwartz rights for apartment #31. #1 and #42 were contingent until such time as they closed on the purchase of the shares of apartments 32 and 44 at market value.

83. Defendants alleged that they were required to record the transfer of the shares on apartments #31, #1, #42 within fifteen (15) days in ACRIS when such sale was contingent upon purchasing # 32 and #44 at market rate after stabilizing the building.

84. Purchasers in addition agreed to pay Plaintiff INNA additional consideration of $125,000 in exchange for her assistance if so be needed in aiding them in removing the 7A administrator but which was not contingent on removal of 7A Administrator.

85. The Purchasers entered into an escrow agreement with Plaintiff INNA and Defendant RIVERSIDE ABSTRACT LLC (hereafter "RIVERSIDE") on August 4, 2014 so that the $125,000 would be held in escrow by RIVERSIDE in light of the above stated agreement.

86. The escrow agreement provided that RIVERSIDE would release the

escrow of $125,000 to Plaintiff INNA at the earlier occurrence of the 7A's removal from the property or the passing of December 1, 2014

87. 7A administrator was not removed prior to December 1, 2014.

88. Accordingly since December 1, 2014 has passed, pursuant to the express terms of the escrow agreement, Plaintiff INNA is entitled to the immediate release of the $125,000.

89. Plaintiff INNA has made a demand on Defendant RIVERSIDE for the release of the escrow pursuant to the Escrow agreement.

90. RIVERSIDE has not released the $125,000 to Plaintiff INNA as provided by the express terms of the escrow agreement notwithstanding Plaintiff INNA'S demand for the release of the funds.

91. To date the purchasers have not closed on the purchase of the remaining shares for apartments 32 and 44 and accordingly FIA and/or Schwartz transfer of the ownership interest of apartments 31, 1, and 42 have not yet vested and SAC and/or Goldwasser interested in Shanghai's mortgage and commission agreement has not vested as such sale was contemporaneous.

## THE RECENT ELECTION OF SCHWARTZ VIOLATES THE BY-LAWS AND IS A NULLITY

92. Due closing of the transfer of the shares for apartments 31, 1, and 42 with FIA and/or Schwartz and because of Purchasers promise to purchase apartments 32 and 44 for market value, the Plaintiffs resigned as members of the board for the HDFC on or about August 2014.

93. FIA called for the special meeting of the shareholders to elect new directors which was scheduled for November 10, 2014.

94. At the special election Defendants FIA and SCHWARTZ appeared with the Plaintiffs shares of apartments 31, 1, and 42 although such transfer was subject to

the closing of the transfer of shares for apartments 32 and 44.

95.    Defendants FIA and SCHWARTZ representing having authority to vote at the election because they represented that they had authority to vote as shareholders of apartments 31, 1, and 42 even though their rights had not yet vested in the shares of the apartments

96.    Under false pretenses that they were about to close for #32 and #44 have obtained proxies to vote for apartments #32 and #44 which were in escrow.

97.    At the special election not only did FIA and SCHWARTZ vote by improperly using Plaintiffs shares(using 5 votes to which they were not entitled), FIA and SCHWARTZ nominated himself to the board and voted for himself improperly using Plaintiffs' proxies

98.    Moreover, even though FIA was only a contingent shareholder at that time and they were in arrears of more than 2 months as they have failed to pay maintenance to the court appointed 7A administrator although specifically were obligated to do so pursuant to the express terms of the Agreement with Plaintiffs.

99.    In light of the foregoing, SCHWARTZ's election to the board of the directors of the HDFC, violated the terms of By-Laws as stated above since only shareholders and only the ones who are not more than two months in the arrears are allowed to be member and/or officers of the HDFC.

100.   In addition to FIA and SCHARTZ'S election to the board of the HDFC, the special election also resulted in the election of three other board members who were also not shareholders of any apartment in the HDFC or were in arrears.

101.   In addition, the November 10, 2014 was improper because it improperly elected four board members when there are presently only three board positions pursuant to the By-Laws.

102. The election further violated the By-Laws because the meeting allowed shareholders who were in arrears more than two months to be elected to the board of the HDFC.

103. Further the election conducted at the special meeting was improper because the shareholders voted to dispense with the two month arrears restriction even though it was specifically forbidden by the By-Laws of the HDFC.

104. The shareholders election to dispense with the two month arrears voting restriction at the special meeting would be tantamount to amending the By-Laws notwithstanding that proper procedures were not followed for making any such amendment.

105. The By-Laws provide that in order to amend the By-Laws the notice of the meeting or special must advise all shareholders specifically put in notice to the shareholders that there is was a proposed amendment to the By-Laws being voted on at the meeting and the substance of the proposed amendment.

106. However, the HDFC did not provide in its notice for the special meeting any proposed amendment to the By-Laws nor of their intention to dispense with the two month arrears restriction for conducting the election of new officers and/or directors of the HDFC.

107. Accordingly the HDFC's allowing the shareholders who owe more than two months to vote also invalidates the election of the new board of the HDFC conducted at the special meeting on November 10, 2014.

108. In light of the foregoing the elections and the directors who were elected are invalid, the results of the election are a nullity and void ab initio.

### AS AND FOR THE FIRST CAUSE OF ACTION
### FOR ALL PLAINTIFFS AGAINST PURCHASERS
#### (Breach of Contract)

109. Plaintiffs repeat and reiterate paragraphs one (1) through one hundred and nine (109) as if more fully set forth below.

110. Plaintiffs' agreed to sell the shares of apartments of apartments 31, 1, and 42 provided that Purchasers later purchase the shares of apartments 32 and 44 at market value and Plaintiffs agreed to split the aggregate proceedings of the sales of the five apartments.

111. Inna arranged for Shanghai to assign its interest to SAC only under condition that Inna would receive market price for her apartment.

112. The Purchasers received the Plaintiffs shares for apartments 31, 1, and 42 at the first closing between the parties which Purchaser were to hold in escrow.

113. The Purchasers to date have not closed on any purchase of the shares for the market value for apartments 32 and 44.

114. The Purchasers have breached the agreement it had with Plaintiffs by failing to purchase apartments 32 and 44 at market value.

115. The Plaintiffs have been damaged by the Purchasers failure to receive the agreed upon consideration for the entire transaction which factored in the Purchasers purchase of apartment 32 and 44 at market value to offset the sale of Apartments 31, 1 and 42 at reduced market value.

116. Therefore, the Plaintiffs demand judgment against the Purchasers in amount to be determined by the court but no less than $1,000,000.

### AS AND FOR THE SECOND CAUSE OF ACTION
### FOR PLAINTIFF INNA AGAINST PURCHASERS AND RIVERSIDE
#### (Breach of Contract)

117.    Plaintiffs repeat and reiterate paragraphs one (1) through one hundred sixteen (116) as if more fully set forth below.

118.    The escrow agreement provided that Plaintiff INNA would receive additional $125,000 by Purchasers upon removal of 7A Administrator or passing December 1, 2014, whichever is earlier.

119.    Pursuant to the express terms of the escrow agreement entered into between purchasers, Plaintiff INNA, and RIVERSIDE, the Plaintiff INNA was to receive the $125,000 upon the earlier of the 7A being removed from the property or the passing of December 1, 2014.

120.    The Defendant RIVERSIDE agreed to hold $125,000 in escrow subject to the above stated terms for release of the escrow as provided in the escrow agreement.

121.    The Defendant RIVERSIDE failed to release the escrow to Plaintiff INNA notwithstanding that December 1, 2014 has passed.

122.    The Plaintiff INNA has been damaged by the Defendant RIVERSIDE's failure to release the escrowed funds from the Purchasers.

123.    Accordingly, Plaintiff INNA demands that a judgment be entered in her favor against RIVERSIDE declaring that Riverside and Purchasers are liable for breach of contract in an amount to be determined by the court but no less than $300,000 for all contractual and consequential damages entitled by Plaintiff Inna under the agreement or under law.

### AS AND FOR A THIRD CAUSE OF ACTION
### FOR ALL PLAINTIFFS AGAINST PURCHASERS
### (Specific Performance)

124. Plaintiffs repeat and reiterate paragraphs one (1) through one hundred and twenty three (123) as if more fully set forth herein.

125. Pursuant to the terms of the agreement between Plaintiffs and Purchasers, Purchasers were obligated to purchase apartments 32 and 44 at market value.

126. Purchasers have not performed their obligation the under agreement with the Plaintiffs by purchasing the shares of apartments 32 and 44 at market value.

127. Accordingly, the Plaintiffs ask that a judgment be entered against the purchasers to specifically perform under the terms of their agreement with Plaintiff by directing Purchases to close on the sale of the shares of apartments 32 and 44 at market value.

### AS AND FOR A FOURTH CAUSE OF ACTION
### FOR ALL PLAINTIFFS AGAINST PURCHASERS
### (Fraud in the Inducement)

128. Plaintiffs repeat and reiterate paragraphs one (1) through one hundred and twenty seven (127) as if more fully set forth herein.

129. In the course of the negotiation of the agreement between Purchasers and Plaintiff's agreement to purchase the Plaintiffs' apartments, Purchasers made representations to the Plaintiff that it would purchase apartments 31, 1, and 42, then remove the 7A administrator for the building, pay real estate taxes and then purchase the shares for the apartment 32 and 44 at market value due to the removal of the 7A administrator and payment of real estate taxes.

130. The Purchasers made the foregoing representations to the Plaintiffs in order to induce the Plaintiffs into entering the agreement with the Purchasers convey

their interests in Plaintiffs' apartments to Purchasers.

131.   The Purchasers made the foregoing representations to the Plaintiffs even though the Purchasers knew or should have known that the representations were false.

132.   Plaintiffs relied on such representations when agreed on this structure of the transaction and when they agreed to sign the ACRIS documents for three apartments before receiving full compensation.

133.   The Plaintiffs have been damaged due to the Purchasers fraudulent inducement of Plaintiffs in order to facilitate the transfer of Plaintiffs' shares in their apartments to the Purchasers.

134.   The Plaintiffs ask that court enter judgment in their favor against Purchasers in an amount to be determined by the court but no less than $1,000,000 in damages.

### AS AND FOR THE FIFTH CAUSE OF ACTION
### FOR PLAINTIFFS AGAINST PURCHASERS, RIVERSIDE AND THE HDFC
### (Declaratory Judgment)

135.   Plaintiffs repeat and reiterate paragraphs one (1) through one hundred and thirty four (134) as if more fully set forth herein.

136.   Plaintiffs demand that the court enter a declaration in favor of the Plaintiffs and against Purchasers declaring that Purchasers have breach their agreement with the Plaintiffs by failing to purchase the shares for apartments 32 and 44.

137.   Plaintiffs demand that the court enter a declaration in favor of the Plaintiffs and against both Purchasers and RIVERSIDE declaring that Plaintiff INNA is entitled to the release of the $125,000 being held in escrow held by RIVERSIDE pursuant to the terms of the escrow agreement.

138.   Plaintiffs demand that the court enter a declaration in favor of the Plaintiffs declaring that alleged elections to the HDFC's at the special meeting on November 10,

2014 the election of board members who are not shareholders of the HDFC and who were more than two months in arrears to be elected to board of the HDFC, violate(using 5 votes to which they were not entitled)s the terms of the By-Laws and the elections are null and void ab initio.

### AS AND FOR THE SIXH CAUSE OF ACTION
### (Setting aside fraudulent conveyances and rescission of contract)

139.    The Plaintiffs repeat and reiterate paragraphs one (1) through one hundred and thirty eight (138) as if more fully set forth herein.

140.    Plaintiffs agreed to sell apartments 31, 1, and 42 at reduced market value to FIA and the mortgage for the building to SAC, only if Purchasers purchased Apartments 32 and 44.

141.    Plaintiffs provided the shares of Apartment 31,1, and 42 to Purchasers to hold in escrow for the closing of Apartments 32 and 44.

142.    Plaintiffs provided the mortgage to the Purchasers to be held in escrow for the closing of Apartments 32 and 44.

143.    Purchasers recorded the shares of Apartment 31, 1, and 42 in ACRIS prior to closing of Apartments 32 and 44.

144.    The Purchasers have not closed on the sale of Apartments 32 and 44.

145.    The Purchasers recording of a transfer of shares for Apartment 31, 1, and 42 is false and a fraudulent recording of the conveyance.

146.    The Plaintiffs demand that a judgment be entered by the court to set aside the sale of Apartments 31, 1, and 42 and direct the return the shares of Apartments 31, 1, and 42 to the Plaintiffs.

147.    The Plaintiffs demand that a judgment be entered by the court to set aside the conveyance of the mortgage and to direct the return of the mortgage to

Plaintiffs.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
### FOR PLAINTIFFS AGAINST DEFENDANTS
#### (Preliminary and Permanent Injunction)

148.   The Plaintiffs repeat and reiterate paragraphs one (1) through one forty

seven (147) as if more fully set forth herein.

149.   The Plaintiffs ask that the court enter a preliminary and permanent

injunction enjoining the HDFC and its purported recently elected Board of Directors by

vacating the results of the election of the board at the special meeting of the HDFC on

November 10, 2014.

150.   The Plaintiffs ask that the court further enter a preliminary and permanent

injunction enjoining HDFC, by the ineligible parties who were purportedly elected board

members of the HDFC at the special meeting on November 10, 2014, from acting in any

way in the name of the HDFC, from binding the HDFC or acting on behalf of HDFC, and

directing these improperly elected board members to cease and desist representing

themselves as members of the board of HDFC during the prosecution of this

proceeding.

151.   In addition, the Plaintiff INNA asks that the court enter a preliminary and

permanent injunction enjoining and directing the Defendant RIVERSIDE to immediately

release the $125,000 held in escrow by RIVERSIDE to Plaintiff INNA based upon the

terms of the escrow agreement.

152.   The Plaintiffs also ask that the court enter a preliminary and permanent

injunction enjoining and ordering Purchasers to purchase the Plaintiffs' shares in

apartments 32 and 44 at market value as per the terms of the agreement between

Plaintiffs and Purchasers.

153.   The Plaintiffs ask that the court enter an order declaring that the

outstanding real estate taxes be paid or an undertaking be provided to satisfy the City of New York's tax lien the sale of the building in foreclosure . Further Plaintiffs seek a preliminary injunction against the Defendant City of New York from foreclosing on the building owned by the HDFC during the pendency of this proceeding

154.   Alternatively, the Plaintiffs ask that the court enter a preliminary and permanent injunction enjoining and directing the HDFC and/or Purchasers to procure a bond to post as an undertaking in the foreclosure action to prevent the foreclosure sale of the property by the City of New York for its purported tax lien on the property.

WHEREFORE, the Plaintiffs demands judgment against the Defendants:

a.   *On the first cause of action entering a judgment for Plaintiffs against Purchasers for $1,000,000 for breach of contract;*

b.   *On the second cause of action entering a judgment in favor of Plaintiff INNA against the Purchasers and RIVERSIDE in the amount of $300,000 for breach of contract;*

c.   *On the third cause of action entering a judgment for Plaintiffs against the Purchasers directed them to specifically perform the terms of the agreement with the Plaintiffs and enjoining and directing the Purchasers to close the purchase of the shares of Apartments 32 and 44 at market value;*

d.   *On the fourth cause of action entering a judgment in favor of Plaintiffs against the Purchaser for $1,000,000 due to Purchasers' fraudulent inducement of Plaintiffs to sell the Plaintiffs' apartments;*

e.   *On the fifth cause of action entering a declaratory judgment in favor of Plaintiffs against Purchasers, RIVERSIDE and the HDFC for the grounds as set forth in the Complaint;*

f.   *On the sixth cause of action entering judgment in favor of Plaintiffs setting aside the transfers of the apartments 31, 1, and 42 and the transfer of the mortgage for the property and rescinding any sale agreement;*

g.   *On the seventh cause of action entering a preliminary and permanent injunction for Plaintiffs against the Defendants for*

*the grounds stated and for relief sought in the Complaint.*

Dated: New York, New York
      December 17, 2014

**Yours, etc.,**

**BEDFORD MANTIA LLP**
By:  James C. Mantia, Esq.
*Attorneys for the Plaintiffs*
10 East 40th Street, Suite 3307
New York, New York 10016
(212) 257-5843

# VERIFICATION

STATE OF NEW YORK    }
                     } ss.:
COUNTY OF NEW YORK }


INNA KHITERER, being duly sworn, deposes and says that she is one of the Plaintiffs in the within proceeding that she has read the foregoing Complaint and knows the contents thereof; that same are true to her own knowledge except as to matters stated to be upon information and belief; and as to those matters she believes them to be true.

INNA KHITERER

Sworn to before me this 17th
day of December 2014

Notary Public

HONG PAN
Notary Public - State of New York
NO. 01PA6292307
Qualified in Kings County
My Commission Expires Nov 4, 2017

EXHIBIT "B"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LOTHAR KROLL, INNA KHITERER, ANDREAS
KROLL, and SERGEI LEONTEV, individually and
derivatively as shareholders of 440 WEST 164TH
STREET HDFC,

                Plaintiffs,

      -against-

S440 WEST 164th STREET HDFC; FIA 164TH ST
HOLDINGS LLC a/k/a FIA 164TH HOLDINGS LLC;
SAC 492071714, LLC; MARK SCHWARTZ; DAVID
GOLDWASSER; RIVERSIDE ABSTRACT, LLC;
CITY OF NEW YORK,

                Defendants

Index No.:653885/2014

**ANSWER**

PLEASE TAKE NOTICE that Defendants FIA 164TH ST Holdings LLC a/k/a FIA 164TH

Holdings LLC ("FIA 164") and Mark Schwartz ("Schwartz") (FIA 164 and Schwartz shall

sometimes hereinafter be collectively referred to as "Defendants"), by their attorneys THE LAW

FIRM OF CANDACE C. CARPONTER, P.C., interposes the following Amended Answer to the

Complaint of the Plaintiffs, as follows:

      1.    Deny the allegations contained in the paragraph of the Complaint numbered "1"

"3","6", "7", "82", "83", "92", "94", "95", "96", "97", "98", "99", "100", "101", "102", "103",

"104", "105", "106", "107", "108", "110", "112", "113", "114", "115", "116", "129", "130",

"131", "132", "133", "134". "136", "137", "138", "149", "150", "151", "152", "153" and "154".

      2.    Deny any knowledge or information sufficient to form a belief as to the truth of

the allegations contained in the paragraph of the Complaint numbered "2", "4", "4(a)," "4(b)",

"28", "70". and "71",  and respectfully refer this Honorable Court to the relevant documents

referenced in the Complaint.

3.     Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraph of the Complaint numbered "5", "9", "10", "11", "12", "13", "14", "15", "16", "17", "18", "19", "20", "23", "24", "25", "26", "30", "31", "32", "33", "34", "35", "36", "38", "39", "40", "41", "42", "43", "44", "45", "46", "48", "49", "50", "51", "52", "53", "54", "55", "56", "57", "58", "59", "60", "61", "62", "63", "64", "65", "66", "67", "72", "73", "87", "89", "90", and "111".

4.     Deny the allegations contained in the paragraph of the complaint numbered "8" , "68", "74", "75", "76", "77", "78", "79", "84", "85", "86", "88", "91", "118", "119", "120", "121", "122", "123", "125", "126", "127", "140", "141", "142", "143", "145", "146" and "147" and respectfully refer this Honorable Court to the relevant documents referenced in the Complaint.

5.     Admit the allegations contained in the paragraphs of the Complaint numbered "21" "22", "27", "69", "80", "81", "93", and "144".

6.     Deny all allegations contained in the paragraph of the Complaint numbered "29" except admit only as to the allegation that Schwartz is a member of FIA 164.

7.     Answering Defendants repeat and reiterate the same admissions and denials as set forth in response to the paragraphs of the Complaint numbered "1" though "154" as if more fully set forth herein.


## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

8.     Plaintiffs fail to state a cause of action upon which relief can be granted against Answering Defendants.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

9.     Plaintiffs' claims are barred by documentary evidence.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

10.     Plaintiffs' claims are barred by the doctrines of waiver and/or estoppel.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

11.     Plaintiffs' claims are barred by ratification.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

12.     Plaintiffs have failed to meet a condition precedent prior to commencing this action.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

13.     Plaintiffs lack standing to maintain this action.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

14.     Plaintiffs' claims are barred by accord and satisfaction.

## AS AND FOR A FIRST COUNTERCLAIM

15.     On or about December 22, 2014, Plaintiffs filed a *lis pendens* against 440 West 164th Street, New York, NY ("the subject property") regarding the pendency of the instant action.

16.     Defendant 440 West 164th Street HDFC ("the HDFC") is the sole owner of the subject property.

17.     The HDFC owns the subject property as a cooperative corporation.

18.     The Plaintiffs' status with regard to the HDFC and the subject property is as shareholders (or former shareholders) of the HDFC, which shares do not constitute real property in any form.

19.     Accordingly, the instant matter involves no question as to title, or possession, use or enjoyment of the subject property.

20.     In light of the foregoing, there is no legal basis for the filing of the *lis pendens,* and such a filing is wholly improper.

21.     Defendants are accordingly entitled to an order directing Plaintiffs to remove the *lis pendens* forthwith.

### AS AND FOR A SECOND COUNTERCLAIM

22.     On or about August 4, 2014, as a part of the transaction involving the sale of Apartments #44 and #32 ("the Contracted Units") located at 438-440 West 164th Street, New York, NY ("the subject building") Defendant FIA 164TH ST Holdings LLC a/k/a FIA 164TH Holdings LLC ("FIA 164"), Riverside Abstract, LLC ("Riverside" or "the Title Company") and Plaintiff Inna Khiterer ("Khiterer") entered into an Escrow Agreement ("the Escrow Agreement").

23.     Pursuant to its express terms, the purpose of the Escrow Agreement expressly stated by the parties, was as "an assurance of her [Khiterer's] cooperation in removal of 7A Administrator,[and] irrespective of whether or not the 7A Administrator is released, the $125,000 is held for convenience only and shall be released to Inna Khiterer or her order on November 30, 2014." ("the Escrow termination date").

24.     Pursuant thereto, $125,000 was deposited in Escrow with the Title Company, to be released until the earlier of the removal of the 7A Administrator or November 30, 2014.

25.     Pursuant to Exhibit A of the Escrow Agreement, the purpose of the Escrow, expressly stated by the parties, "Escrow Funds shall not be released until [Plaintiff] Inna Khiterer

executes ACRIS Documents for Apartment #44 and #32 on behalf of the sellers." (Apartments #44 and #32 hereinafter referred to as "the Contracted Units").

26.     Despite the fact that the Escrow termination date has passed, Plaintiff Khiterer has failed to sign any ACRIS documents to effect the transfer of the shares to the Contracted Units.

27.     Accordingly, Defendants are entitled to an order of this court directing Plaintiffs to specifically perform under the terms of the Escrow Agreement by executing the said ACRIS documents, and taking any and all other steps necessary to transfer the shares for the Contracted Units to Defendant FIA 164.

## AS AND FOR A THIRD COUNTERCLAIM

28.     The Defendants repeat and reallege paragraphs 22 through 27 above as if they were fully set forth herein.

29.     Pursuant to the express terms of the Escrow Agreement, the Plaintiff Khiterer and Defendant FIA 164 jointly and severally agreed to defend, indemnify and "hold Escrow Agent [the Title Company] harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrow Agent's duties" under the Escrow Agreement, except in the case of gross misconduct.

30.     Thus, Defendant FIA 164 is responsible along with Plaintiff Khiterer for the costs and expenses incurred by Title Company to defend the within litigation brought by Plaintiffs insofar as it raises claims against the Title Company.

31.     Defendants maintain that the claims brought against the Title Company are baseless and without any foundation because Plaintiff Khiterer has failed to perform her obligations under the Escrow Agreement in order to obtain release of the funds held in Escrow by the Title Company.

32.     Because Defendant FIA 164 has committed no wrong, but may be held liable for the legal fees incurred by the Title Company as a result of the wrongdoing of Plaintiffs, Defendants

are entitled to indemnification from Plaintiffs for any fees that Defendants may be liable to pay the Title Company.

## AS AND FOR A FOURTH COUNTERCLAIM

33.     The Defendants repeat and reallege paragraphs 15 through 32 above as if they were fully set forth herein.

34.     By the instant action, the Plaintiffs have raised seven claims against the Defendants.

35.     The Plaintiffs have brought the instant litigation solely in order to force the Defendants to pay them to discontinue the within litigation.

36.     The entire Complaint is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; the litigation was undertaken primarily to harass or maliciously injure Defendants; and Plaintiffs have asserted material factual statements that are false.

37.     Thus, Plaintiffs and their counsel should be held liable to Defendants for costs incurred in defending the instant litigation, in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, in an amount no less than $15,000.00.

## AS AND FOR A FIFTH COUNTERCLAIM

38.     The Defendants repeat and reallege paragraphs 22 through 37 above as if they were fully set forth herein.

39.     Pursuant to the express terms of the contracts for the sale of apartments #1, #31, and #42 ("the transferred units") of the subject building, the purchase prices were precisely defined, and paid by Defendant FIA 164.

40. Pursuant to the contract of sale for Apartment #1, FIA 164 purchased apartment #1 for $48,000.00.

41. Pursuant to the contract of sale for Apartment #31, FIA 164 purchased apartment #31 for $55,000.00.

42. Pursuant to the contract of sale for Apartment #42, FIA 164 purchased apartment #42 for $50,000.00.

43. By the instant action, the Plaintiffs claim that the sales prices for the transferred units were substantially higher than that stated in the Contracts.

44. By reason of the foregoing, the Plaintiffs have breached the Contracts.

45. Accordingly, the Defendants have suffered damages in the sum of no less than $200,000.00

## AS AND FOR A SIXTH COUNTERCLAIM

46. The Defendants repeat and reallege paragraphs 22 through 45 above as if they were fully set forth herein.

47. Pursuant to the express terms of the contracts for the sale of apartments #32, and #44 ("the Contracted Units") of the subject building, the purchase prices were precisely defined.

48. Pursuant to the contract of sale for Apartment #32, Plaintiff Khiterer defined the purchase price as $168,000.00 to be paid as follows: $65,000.00 to be deposited into Escrow for Khiterer, and $103,000.00 to be paid at closing to Khiterer.

49. Pursuant to the contract of sale for Apartment #44, Plaintiff Sergei Leontev defined the purchase price as $169,000.00 to be paid as follows: $60,000.00 to be deposited into Escrow for Community Homes LLC, and $109,000.00 to be paid at closing to Community Homes LLC.

50. Defendant FIA 164 paid said sums of $168,000.00 and $169,000.00, as directed, yet Plaintiffs have failed to transfer the contracted units to Defendants.

51. By reason of the foregoing, the Plaintiffs have breached the Contracts. Accordingly, the Defendants have suffered damages in the sum of no less than $200,000.00

**WHEREFORE**, answering Defendants demand judgment dismissing the Complaint in its entirety, granting judgment on their counterclaims in their entirety as follows:

on the First Counterclaim, an order of this court directing Plaintiffs to remove the *lis pendens* forthwith;

on the Second Counterclaim, an order of this court directing Plaintiffs to specifically perform under the terms of the Escrow Agreement by executing the ACRIS documents, and taking any and all other steps necessary to transfer the shares for Apartments #44 and #32 to Defendant FIA 164;

on the Third Counterclaim, indemnification from Plaintiffs for any fees that Defendants may be liable to pay the Title Company in an amount to be determined;

on the Fourth Counterclaim, judgment against Plaintiffs and their counsel for costs incurred in defending the instant litigation, in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, in an amount no less than $15,000.00;

on the Fifth Counterclaim, judgment in the sum of $200,000.00 for breach of contract;

on the Sixth Counterclaim, judgment in the sum of $200,000.00 for breach of contract;

and granting such other and further relief as this Court seems just and proper.


Dated: March 26, 2015
       Brooklyn, New York


          Yours, etc.,

          THE LAW FIRM OF CANDACE C. CARPONTER, P.C.
          Attorneys for Defendants,
          FIA 164TH ST Holdings LLC a/k/a FIA 164TH Holdings LLC
          and Mark Schwartz
          By: Elissa R. Waltz, Esq.
          31 Smith Street, Second Floor
          Brooklyn, NY  11201
          212-367-9600

## VERIFICATION

ELISSA R. WALTZ, being the attorney for the Defendants FIA 164TH ST Holdings LLC a/k/a FIA 164TH Holdings LLC and Mark Schwartz herein, hereby affirms under the penalties of perjury and pursuant to CPLR Section 2106 that she has read the foregoing answer and knows the content thereof, and that, upon information and belief, the same is true. The source of your affirmant's information and belief are oral statements and records furnished by Defendants. The verification is made by the undersigned because the Defendant FIA 164TH ST Holdings LLC's offices are not located and the Defendant Mark Schwartz's residence is not located within the county in which your affirmant's office is located.



S/
ELISSA R. WALTZ

Dated: Brooklyn, New York
      March 26, 2015

## VERIFICATION

ELISSA R. WALTZ, being the attorney for the Defendants FIA 164TH ST Holdings LLC a/k/a FIA 164TH Holdings LLC and Mark Schwartz herein, hereby affirms under the penalties of perjury and pursuant to CPLR Section 2106 that she has read the foregoing answer and knows the content thereof, and that, upon information and belief, the same is true. The source of your affirmant's information and belief are oral statements and records furnished by Defendants. The verification is made by the undersigned because the Defendant FIA 164TH ST Holdings LLC's offices are not located and the Defendant Mark Schwartz's residence is not located within the county in which your affirmant's office is located.

_Elissa Waltz_
ELISSA R. WALTZ

Dated: Brooklyn, New York
       March 26, 2015

EXHIBIT "C"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LOTHAR KROLL, INNA KHITERER, ANDREAS
KROLL, and SERGEI LEONTEV, individually and
derivatively as shareholders of 440 WEST 164TH
STREET HDFC,

               Plaintiffs,

           -against-

440 WEST 164th STREET HDFC; FIA 164TH ST
HOLDINGS LLC a/k/a FIA 164TH HOLDINGS LLC;
SAC 492071714, LLC; MARK SCHWARTZ; DAVID
GOLDWASSER; RIVERSIDE ABSTRACT, LLC;
CITY OF NEW YORK,

               Defendants

Index No.:653885/2014

**ANSWER**

      Defendants SAC 492071714 ("SAC") and David Goldwasser ("Goldwasser") (SAC and

Goldwasser shall sometimes hereinafter be collectively referred to as "Defendants"), by their

attorneys Goldberg & Rimberg, PLLC, answering the Complaint of the Plaintiffs, respectfully

states and alleges as follows:

## NATURE OF THE ACTION

1.    Deny the allegations contained in the paragraph of the Complaint numbered "1".

2.    Deny any knowledge or information sufficient to form a belief as to the truth of

the allegations contained in the paragraph of the Complaint numbered "2" and respectfully refer

this Honorable Court to the relevant documents referenced in the Complaint.

3.    Deny the allegations contained in the paragraph of the Complaint numbered "3".

4.    Deny any knowledge or information sufficient to form a belief as to the truth of the

allegations contained in the paragraphs of the Complaint numbered "4", "4(a)," and "4(b)" and

respectfully refer this Honorable Court to the relevant documents referenced in the Complaint.

5.     Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraph of the Complaint numbered "5."

6.     Deny all allegations contained in the paragraph of the Complaint numbered "6".

7.     Deny the allegations contained in the paragraph of the Complaint numbered "7".

8.     Deny the allegations contained in the paragraph of the complaint numbered "8" and respectfully refer this Honorable Court to the escrow agreement referenced in the Complaint.

9.     Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraphs of the Complaint numbered "9" and "10".

## THE PARTIES

10.     Answering Defendants repeat and reiterate the same admissions and denials as set forth in response to the paragraphs of the Complaint numbered "1" though "10" as if more fully set forth herein.

11.     Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraphs of the Complaint numbered "11", "12", "13", "14", "15", "16", "17", "18", "19", "20", "21" and "22".

12.     Admit the allegation contained in the paragraphs of the Complaint numbered "23" and "24".

13.     Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraphs of the Complaint numbered "25", "26" and "27".

14.     Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraph of the Complaint numbered "28" and respectfully refer this Honorable Court to the relevant documents referenced in the Complaint.

15. Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraphs of the Complaint numbered "29".

16. Admit the allegations contained in the paragraph of the Complaint numbered "30".

17. Deny all allegations contained in the paragraph of the Complaint numbered "31" except admit only as to the allegation that David Goldwasser is a member of SAC.

18. Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraphs of the Complaint numbered "32", "33", "34", "35" and "36".

## RELEVANT FACTS WITH RESPECT TO THE FORMATION OF THE HDFC

19. Answering Defendants repeat and reiterate the same admissions and denials as set forth in response to the paragraph of the Complaint numbered "1" through "36" as if more fully set forth herein.

20. Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraphs of the Complaint numbered "38", "39", "40", "41", "42", "43", "44", "45" and "46".

## THE DECLINE OF THE BUILDING

21. Answering Defendants repeat and reiterate the same admissions and denials as set forth in response to the paragraph of the Complaint numbered "1" through "46" as if more fully set forth herein.

22. Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraphs of the Complaint numbered "48", "49", "50", "51", "52", "53", "54", "55", "56", "57", "58", "59", "60", "61", "62", "63", "64" and "65".

## THE PLAINTIFFS ATTEMPTS TO TRANSFER THEIR APARTMENTS

23. Answering Defendants repeat and reiterate the same admissions and denials as set forth in response to the paragraphs of the Complaint numbered "1" through "65" as if more fully set forth herein.

24. Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraphs of the Complaint numbered "66" and "67".

25. Deny the allegations contained in the paragraphs of the Complaint numbered "68" and respectfully refer this Honorable Court to the relevant documents referenced in the Complaint.

26. Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraphs of the Complaint numbered "69".

27. Deny the allegations contained in the paragraphs of the Complaint numbered "70" and "71"and respectfully refer this Honorable Court to the relevant documents referenced in the Complaint.

28. Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraphs of the Complaint numbered "72" and "73".

29. Deny the allegations contained in the paragraphs of the Complaint numbered "74", "75", "76", "77", "78" and "79" and respectfully refer this Honorable Court to the relevant documents referenced in the Complaint.

30. Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraphs of the Complaint numbered "80", "81", "82" and "83",

31. Deny the allegations contained in the paragraphs of the Complaint numbered "84", "85" and "86" and respectfully refer this Honorable Court to the relevant documents referenced in the Complaint.

32.    Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraphs of the Complaint numbered "87".

33.    Deny the allegations contained in the paragraphs of the Complaint numbered "88", and respectfully refer this Honorable Court to the relevant documents referenced in the Complaint.

34.    Deny any knowledge or information sufficient to form a belief as to the truth of the allegations contained in the paragraphs of the Complaint numbered "89" and "90".

35.    Deny the allegations contained in the paragraphs of the Complaint numbered "91", and respectfully refer this Honorable Court to the relevant documents referenced in the Complaint.

## THE RECENT ELECTION OF SCHWARTZ VIOLATES THE BY-LAWS AND IS A NULLITY

36.    Answering Defendants repeat and reiterate the same admissions and denials as set forth in response to the paragraphs of the Complaint numbered "1" through "91" as if more fully set forth herein.

37.    Deny the allegations contained in the paragraphs of the Complaint numbered "92", "93", "94", "95", "96", "97", "98", "99", "100", "101", "102", "103", "104", "105", "106", "107" and "108".

## AS AND FOR THE FIRST CAUSE OF ACTION FOR ALL PLAINTIFS AGAINST PURCHASER
### (Breach of Contract)

38.    Answering Defendants repeat and reiterate the same admissions and denials as set forth in response to the paragraphs of the Complaint numbered "1" through "108" as if more fully set forth herein.

39.    Deny the allegations contained in the paragraphs of the Complaint numbered "110", "111", "112", "113", "114", "115" and "116".

### AS AND FOR THE SECOND CAUSE OF ACTION FOR THE PLAINTIFF INNA
### AGAINST PURCHASERS AND RIVERSIDE.
#### (Breach of Contract)

40.     Answering Defendants repeat and reiterate the same admissions and denials as set forth in response to the paragraphs of the Complaint numbered "1" through "116" as if more fully set forth herein.

41.     Deny all allegations contained in the paragraphs of the Complaint numbered "118", "119", "120", "121", "122" and "123" and respectfully refer this Honorable Court to the relevant documents referenced in the Complaint.

### AS AND FOR A THIRD CAUSE OF ACTION
### FOR ALL PLAINTIFFS AGAINST PURCHASERS
#### (Specific Performance)

42.     Answering Defendants repeat and reiterate the same admissions and denials as set forth in response to the paragraphs of the Complaint numbered "1" though "123" as if more fully set forth herein.

43.     Deny all allegations contained in the paragraphs of the Complaint numbered "125", "126" and "127" and respectfully refer this Honorable Court to the relevant documents referenced in the Complaint.

### AS AND FOR A FOURTH CASUE OF ACTION
### FOR ALL PLAINTIFFS AGAINST PURCHASERS
#### (Fraud in the Inducement)

44.     Answering Defendants repeat and reiterate the same admissions and denials as set forth in response to the paragraphs of the Complaint numbered "1" through "127" as if more fully set forth herein.

45.     Deny all allegations contained in the paragraphs of the Complaint numbered "129", "130", "131", "132", "133" and "134".

## AS AND FOR THE FIFTH CAUSE OF ACTION FOR PLAINTIFFS AGAINST PURCHASERS, RIVERSIDE AND THE HDFC
### (Declaratory Judgment)

46.     Answering Defendants repeat and reiterate the same admissions and denials as set forth in response to the paragraphs of the Complaint numbered "1" through "134" if more fully set forth herein.

47.     Deny all allegations contained in the paragraphs of the Complaint numbered "136", "137" and "138".

## AS AND FOR THE SIXTH CAUSE OF ACTION
### (Setting aside fraudulent conveyances and rescission of contract)

48.     Answering Defendants repeat and reiterate the same admission and denials as set forth in response to the paragraphs of the Complaint numbered "1" through "138" as if more fully set forth herein.

49.     Deny all allegations contained in the paragraphs of the Complaint numbered "140", "141", "142", "143", "144", "145", "146" and "147" and respectfully refer this Honorable Court to the relevant documents referenced in the Complaint.

## AS AND FOR THE SEVENTH CAUSE OF ACTION FOR THE PLAINTIFFS AGAINST DEFENDANTS
### (Preliminary and Permanent Injunction)

50.     Answering Defendants repeat and reiterate the same admission and denials as set forth in response to the paragraphs of the Complaint numbered "1" through "147" as if more fully set forth herein.

51.     Deny all allegations contained in the paragraphs of the Complaint numbered "149", "150", "151", "152", "153" and "154".

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

52. Plaintiffs fail to state a cause of action upon which relief can be granted against Answering Defendants.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

53. Plaintiffs' claims are barred by documentary evidence.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

54. Plaintiffs' claims are barred by unclean hands.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

55. Plaintiffs' claims are barred by the doctrines of waiver and/or ratification.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

56. Plaintiffs' claims are barred by estoppel.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

57. Plaintiffs' claims are barred by setoff.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

58. Plaintiffs have failed to mitigate their damages.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

59. Plaintiffs' claims are barred by their own culpable conduct and/or the culpable conduct of Plaintiffs' agents.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

60. Plaintiffs assumed the risks of any damages they allege they suffered.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

61. Plaintiffs have failed to meet a condition precedent prior to commencing this action.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

62. Plaintiffs lack standing and/or capacity to maintain this action.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

63. Plaintiffs' claims are barred by the statute of limitations.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

64. Plaintiffs' claims are barred by accord and satisfaction.

### AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

65. This Court lacks personal jurisdiction over Answering Defendants.

**WHEREFORE**, answering Defendant demands judgment dismissing the Complaint in its entirety, and granting such other and further relief as this Court seems just and proper.

Dated: March 3, 2015
New York, New York

Cecily A. Harris
GOLDBERG & RIMBERG PLLC
*Attorneys for Defendants*
*SAC 4902071714 LLC and*
*David Goldwasser*
115 Broadway – 3rd Floor
New York, New York 10006

## ATTORNEY VERIFICATION

     The undersigned, an attorney licensed to practice as such in the State of New York, affirms, under the penalty of perjury as follows:

     This verification is made by the undersigned and not by the answering Defendants because Defendants reside a County other than where the undersigned has her office.

     The foregoing Defendants' Answer is true to my knowledge and based on facts and information related to me by my clients.

Dated:  New York, New York
       March 3, 2015

                                          Cecily A. Harris

Index No.: 653885/2014

# SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

LOTHAR KROLL, INNA KHITERER, ANDREAS KROLL, and SERGEI LEONTEV, individually and derivatively as shareholders of 440 WEST 164TH STREET HDFC,

Plaintiff,

-against-

440 WEST 164TH STREET HDFC; FIA 164 ST HOLDINGS LLC a/k/a FIA 164 HOLDINGS LLC; SAC 492071714 LLC; MARK SCHWARTZ; DAVID GOLDWASSER; RIVERSIDE ABSTRACT, LLC; CITY OF NEW YORK,

Defendants.

## VERIFIED ANSWER

# GOLDBERG & RIMBERG, PLLC
BY: CECILY A. HARRIS
*Attorneys for successor-in-interest to Plaintiff*
115 Broadway, Suite 302
New York, New York 10006
(212) 697-3250

To                                                    Signature (Rule 130-1.1-a)

_____

Attorneys for

_____

Service of a copy of the within _____ is hereby admitted.

Dated:

_____

Attorneys for

EXHIBIT "D"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
LOTHAR KROLL, INNA KROLL, ANDREAS KROLL,
And SERGEI LEONTEV, individually and derivatively
as shareholders of 440 WEST 164TH STREET HDFC,

                                    Plaintiffs,                    Index No.:
                                                                  653885/14
                        -against-
                                                                  **REPLY TO COUNTERCLAIMS**


440 WEST 164TH STREET HDFC; FIA 164TH ST
HOLDINGS LLC a/k/a FIA 164TH HOLDINGS LLC;
SAC 492071714, LLC; MARK SCHWARTZ; DAVID
GOLDWASSER; RIVERSIDE ABSTRACT, LLC; and
CITY OF NEW YORK.

                                    Defendants.
-----------------------------------------------------------------X

**PLEASE TAKE NOTICE** that Plaintiffs hereby replies to Defendants' FIA 164TH

ST HOLDINGS LLC a/k/a FIA 164TH ST HOLDINGS LLC a/k/a FIA 164TH HOLDINGS LLC;

counterclaims as set forth in the Defendants' answers as follows.

### AS AND FOR THE ALLEGATIONS IN THE FIRST COUNTERCLAIM

1)      The Plaintiffs' admit paragraphs 15 and 18 of the answer.

2)      The Plaintiffs' deny sufficient information to form a belief as to the truth of the

allegations contained in paragraphs 16 and 17 of the answer.

3)      The Plaintiffs' deny the allegations contained in paragraphs 19, 20 and 21 of the

answer.

### AS AND FOR THE ALLEGATIONS IN THE SECOND COUNTERCLAIM

4) The Plaintiffs' admit paragraphs 22 of the answer solely to the extent of admitting that an escrow agreement was entered into but denies the remainder of the paragraph.

5) To the extent a response is required Plaintiffs' deny the allegations contained in paragraphs 23 and 25 of the answer and respectfully refer all questions of legal interpretation or interpretation of documents to the court.

The Plaintiffs' deny sufficient information to form a belief as to the truth of the allegation contained in paragraph 24 of the complaint. **AS AND FOR THE ALLEGATIONS IN THE SECOND COUNTERCLAIM**

6) The Plaintiffs' admit paragraphs 22 of the answer solely to the extent of admitting that an escrow agreement was entered into but denies the remainder of the paragraph.

7) To the extent a response is required Plaintiffs' deny the allegations contained in paragraphs 23 and 25 of the answer and respectfully refer all questions of legal interpretation or interpretation of documents to the court.

8) The Plaintiffs' deny sufficient information to form a belief as to the truth of the allegation contained in paragraph 24 of the complaint.

9) The Plaintiffs' deny the allegations contained in paragraphs 26 and 27 of the answer.

**AS AND FOR THE ALLEGATIONS IN THE THIRD COUNTERCLAIM**

10) The Plaintiffs' deny the allegations contained in paragraphs 28 of the answer.

11) To the extent a response is required Plaintiffs' deny the allegations contained in paragraphs 29 of the answer and respectfully refer all questions of legal interpretation or interpretation of documents to the court.

12) The Plaintiffs' deny sufficient information to form a belief as to the truth of the allegations contained in paragraph 30 of the answer.

13) The Plaintiffs' deny the allegations contained in paragraph 31 and 32 of the answer.

## AS AND FOR THE ALLEGATIONS IN THE FOURTH COUNTERCLAIM

14) To the extent a response is required Plaintiffs' deny the allegations contained in paragraphs 34 of the answer and respectfully refer all questions of legal interpretation or interpretation of documents to the court

15) The Plaintiffs' deny the allegations contained in paragraph 33, 35, 36, and 37.

## AS AND FOR THE ALLEGATIONS IN THE FIFTH COUNTERCLAIM

16) To the extent a response is required Plaintiffs' deny the allegations contained in paragraphs 39, 40, 41, 42 of the answer and respectfully refer all questions of legal interpretation or interpretation of documents to the court

17) The Plaintiffs' deny the allegations contained in paragraph 38, 44 and 45.

18) As to the paragraph 43 of the answer, Plaintiffs' admit the allegation to the extent that the agreed upon sale price for the units was substantially higher but denies the remainder of the paragraph.

## AS AND FOR THE ALLEGATIONS IN THE SIXTH COUNTERCLAIM

19) To the extent a response is required Plaintiffs' deny the allegations contained in paragraphs 47, 48, and 49 of the answer and respectfully refer all questions of legal interpretation or interpretation of documents to the court

20) The Plaintiffs' deny the allegations contained in paragraph 46, 50 and 51.

### AS AND FOR THE FIRST AFFIRMATIVE DEFENSE

21) The Defendants fails to state a cause of action upon which relief can be granted.

### AS AND FOR THE SECOND AFFIRMATIVE DEFENSE

22) The Defendants have acted in bad faith and as such the Respondent should be barred from recovery due to their unclean hands.

## AS AND FOR THE THIRD AFFIRMATIVE DEFENSE

23) The Defendants lacks standing including but limited to the fact that the Defendants are not shareholders of 440 West 164th Street HDFC and because the individuals can not assert a counterclaim with respect the filing of the Notice of Pendency since this only Defendant 440 West 164th Street HDFC is the only proper party to make any objection.

## AS AND FOR THE FOURTH AFFIRMATIVE DEFENSE

24) The Plaintiffs and Defendants had an agreement that the sale price of all units alleged in the complaint would be substantially higher by the close of any sale of the units.

25) The Plaintiffs justifiably relied on the Defendants' representation for providing a higher sale price to be induced into holdings shares of the first three units in escrow pending completion of the whole transaction.

26) By virtue of the foregoing, a contract and/or a novation was reached between the parties for a greater sale price than alleged by the Defendants.

## AS AND FOR THE FIFTH AFFIRMATIVE DEFENSE

27) Plaintiffs repeat and reiterate paragraphs one (1) through twenty seven (27) as if more fully set forth herein.

28) The actions taken by the Defendants in raising these counterclaims in this proceeding is purely retaliatory against the Plaintiffs for challenging the Defendants fraudulent actions.

## AS AND FOR THE SIXTH AFFIRMATIVE DEFENSE

29) Plaintiffs repeat and reiterate paragraphs one (1) through twenty eight (28) as if more fully set forth herein.

30) The Defendants' counterclaims are barred by General Obligations Law and/or the Statute of Frauds.

## AS AND FOR THE SEVENTH AFFIRMATIVE DEFENSE

31) Plaintiffs repeat and reiterate paragraphs one (1) through thirty (30) as if more fully set forth herein.

32) There is no contract or agreement between the parties nor is there any statutory basis either for payment of Defendants' legal fees or for indemnification of the Defendants.

## AS AND FOR THE EIGHTH AFFIRMATIVE DEFENSE

33) Plaintiffs repeat and reiterate paragraphs one (1) through thirty one (31) as if more fully set forth herein.

34) The Defendants are barred from proceeding with their counterclaims due to waiver and/or estoppel.

WHEREFORE the Plaintiffs demand judgment dismissing the counterclaims raised

herein together with the costs and disbursements of defending those claims raised.

Dated: New York, New York
      May 5, 2015

                    Yours, etc.

                    BEDFORD MANTIA LLP
                    10 East 40th Street
                    Suite 3307
                    New York, New York 10016
                    (212) 257-5845

                    BY:_____

                        JAMES C. MANTIA, ESQ.
                        Attorneys for the Plaintiffs

TO:    The Law Firm of Candace C. Carponter, P.C.
       Attorneys for the Defendants FIA 164 Holdings LLC and Mark Schwartz
       31 Smith Street, Second Floor
       Brooklyn, New York 11201

       The Law Office of Jeffery Fleischman PC
       Attorneys for Riverside Abstract LLC
       65 Broadway
       Suite 842
       New York, New York 10006

       Goldberg & Rimberg, PLLC
       Attorneys for SAC 492071714 LLC and David Goldwasser
       115 Broadway
       Suite 302
       New York, New York 10006

       Koffsky & Schwalb, LLC
       Attorneys for 440 West 164th Street HDFC
       349 Fifth Avenue
       Suite 733
       New York, New York 10016

VERIFICATION

STATE OF NEW YORK )
                            :SS
COUNTY OF NEW YORK     )

        JAMES MANTIA, being duly sworn, deposes and says:

        I am the attorney for the PLAINTIFFS in the within action.

        I have read the foregoing Reply to Counterclaims and know the contents thereof

based on my review of Plaintiff's file and conversations had with the Plaintiff.

        That the same is true to my knowledge, except as to the matters therein stated to

be alleged on information and belief, and as to those matters I believe them to be true.

                                  _____

                                  JAMES MANTIA

Affirmed this
Day of May 2015

SUPREM COURT OF THE STATE OF NEW YORK     Index No.: 653858/14
COUNTY OF NEW YORK
_____

LOTHAR KROLL, INNA KHITERER, ANDREAS KROLL and SERGUI LEONTEV,
individually and derivatively as shareholders of 440 WEST 164TH STREET HDFC,

                              Plaintiffs,

        -against-


440 WEST 164TH STREET HDFC, FIA 164TH ST HOLDINGS, LLC a/k/a
FIA 164TH HOLDINGS, LLC, SAC492071714 LLC; MARK SCHWARTZ; DAVID
GOLDWASSER; RIVERSIDE ABSTRACT, LLC; and CITY OF NEW YORK
STEFANO PRATICO and PER LEI, LLC d/b/a BAR PRIMA;

                              Defendants.

_____


_____


## REPLY TO COUNTERCLAIMS
_____


**BEDFORD MANTIA LLP**
*Attorneys for the Plaintiffs*
10 East 40th Street
Suite 3307
New York, New York 10016
Tel: (212) 257-5845
Fax: 212-320-0639

EXHIBIT "E"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------x

LOTHAR KROLL, INNA KHITERER, ANDREAS
KROLL, and SERGEI LEONTEV, individually and
derivatively as shareholders of 440 WEST 164TH STREET
HDFC,

                              Plaintiffs,

                    -against-

440 WEST 164th STREET HDFC; FIA 164TH ST
HOLDINGS LLC a/k/a FIA 164TH HOLDINGS LLC; SAC
492071714, LLC; MARK SCHWARTZ; DAVID
GOLDWASSER; RIVERSIDE ABSTRACT, LLC; CITY
OF NEW YORK,

                              Defendants.

------------------------------------------------x

Index No.: 653885-2014

Justice O. Peter Sherwood

**Motion Sequence #2**

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that, upon the affirmation of Efrem Schwalb and the exhibits attached thereto, the Memorandum of Law in Support of Motion to Dismiss and to Cancel the Notice of Pendency, and upon all prior pleadings and proceedings, Defendant 440 West 164th Street HDFC ("Defendant") will move this Court at the motion submission part, Room 130, at the Supreme Court, located at 60 Centre Street, New York, New York, on March 25, 2015 at 9:30 a.m., or as soon thereafter as counsel can be heard, for an order (1) pursuant to CPLR 3211(a)(1), (a)(3) and 3211(a)(7), dismissing Plaintiff's Complaint in its entirety and with prejudice; (2) pursuant to CPLR 6514 to cancel the notice of pendency filed by Plaintiffs and for costs and actual attorney's fees incurred as allowed by statute; and (3) granting such other and further relief as the Court may deem just and proper.

Pursuant to CPLR 2214(b), answering papers and any notice of cross motion with supporting papers, if any, are required to be served upon the undersigned at least seven (7) days before the return date of the motion.

Dated: March 9, 2015
New York, New York

KOFFSKY SCHWALB, LLC

By: /s/ Efrem Schwalb
Efrem Schwalb

349 Fifth Avenue, Suite 733
New York, New York 10016
(646) 553-1590

*Attorneys for Defendant 440 West 164th Street HDFC*

To:     All Counsel of Record (By E-Filing)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------x

LOTHAR KROLL, INNA KHITERER, ANDREAS
KROLL, and SERGEI LEONTEV, individually and
derivatively as shareholders of 440 WEST 164TH STREET
HDFC,

                     Plaintiffs,

                -against-

440 WEST 164th STREET HDFC; FIA 164th ST
HOLDINGS LLC a/k/a FIA 164th HOLDINGS LLC;
SAC 492071714, LLC; MARK SCHWARTZ; DAVID
GOLDWASSER; RIVERSIDE ABSTRACT, LLC; CITY
OF NEW YORK,

                    Defendants.

------------------------------------------x

Index No.: 653855-2014

Justice O. Peter Sherwood

**Motion Sequence #2**

## MEMORANDUM OF LAW OF DEFENDANT 440 WEST 164th STREET HDFC IN SUPPORT OF MOTION TO DISMISS AND TO CANCEL NOTICE OF PENDENCY

KOFFSKY SCHWALB LLC
349 Fifth Avenue, Suite 733
New York, New York 10016
(646) 553-1590

*Attorneys for Defendant 440 West 164th
Street HDFC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF RELEVANT FACTS .............................................................................. 2

      A.    Plaintiffs' Agreement to Sell Their Cooperative Shares of Five
           Apartments .............................................................................................. 3

      B.    The Alleged Breach and Improper Election .............................................. 4

      C.    Current Proceeding and the Notices of Pendency ...................................... 4

ARGUMENT ........................................................................................................................ 5

    I.    PLAINTIFFS' CLAIMS AGAINST HDFC FAIL BECAUSE NO
         DEMAND WAS MADE ON HDFC AND THE COMPLAINT DOES
         NOT ALLEGE THAT DEMAND WAS FUTILE ................................................ 5

    II.    THE NOTICE OF PENDENCY MUST BE VACATED .................................... 6

    III.    HDFC'S COSTS AND LEGAL FEES SHOULD BE AWARDED
          UNDER 6514(C) ........................................................................................ 7

CONCLUSION .................................................................................................................... 8

Defendant 440 West 164th Street HDFC ("Moving Defendant" or "HDFC") submits this memorandum of law in support of its motion to: (1) dismiss the Complaint against HDFC pursuant to CPLR 3211(a)(1),(a)(3) and (a)(7); and (2) cancel the notice of pendency filed by Plaintiffs and for an award of costs and actual attorney's fees incurred pursuant to CPLR 6514.[1]

## PRELIMINARY STATEMENT

Plaintiffs brought this action alleging, among other things, breach of contract relating to their sale of certain cooperative apartment shares in movant 440 West 164th Street HDFC, which is a special housing cooperative formed for the purpose of providing low income housing in New York City. The four plaintiffs are either current or former owners of shares in HDFC. Plaintiffs claim that certain other defendants are in breach of an agreement to purchase the shares of apartments 32 and 44 in HDFC because they claim that there was an alleged agreement to purchase those shares at "market value," which they claim is in excess of $375,000 for each of those apartments. However, Plaintiffs disingenuously and intentionally ignore the written contracts (the "Contracts") for those apartments which clearly states that the purchase price for those two apartment was $168,000 and $169,000 respectively, all of which has been paid other than $125,000 which was placed in escrow pursuant to an escrow agreement (the "Escrow Agreement"). Accordingly, Plaintiffs' claims against these other defendants appears to be barred both by the express terms of the written agreement and Escrow Agreement and by the Statute of Frauds. *See American Committee for the Weizmann Institute of Science v. Dunn*, 36 A.D.3d 419, 420 (1st Dep't 2007) (dismissing claim for specific performance of oral agreement to sell shares in cooperative

---

[1]     A copy of the Complaint, dated December 17, 2014 is attached as Exhibit A to the Affirmation of Efrem Schwalb, dated March 9, 2015 ("Schwalb Aff."). References to "¶ _" are to paragraphs of the Complaint.

apartment based on statute of frauds); *Lebowitz v. Mingus*, 100 A.D.2d 816, 817 (1st Dep't 1984) (same); *Alayoff v. Alayoff*, 112 A.D.3d 564 (2d Dep't 2013) (same).

The only claims asserted against HDFC are the fifth and seventh causes of action, which are derivative claims on behalf of all of HDFC's shareholders seeking: (a) a declaratory judgment that recent elections conducted by HDFC pursuant to a special election are null and void; and (b) a mandatory injunction vacating the results of the election and to enjoin HDFC through the newly elected board from binding or acting on behalf of HDFC.

Plaintiffs' claims must be dismissed against HDFC because the Complaint fails to allege the most basic element of a derivative claim. It is black letter law that to sue derivatively, a plaintiff must either first make a demand on the corporation on whose behalf it is asserting derivative claims or properly allege in the complaint that such a demand is futile. The Complaint neither alleges that demand was made or that such a demand was futile. Accordingly, the Complaint must be dismissed against HDFC.

HDFC also moves to cancel the notices of pendency that were filed by Plaintiffs pursuant to CPLR 6514. First, the notice of pendency should be cancelled because the Complaint does not state a claim against the other defendants to support a notices of pendency. Moreover, even if Plaintiffs' claims were viable, which they are not, New York courts have repeatedly held that a notice of pendency may not be filed in connection with a dispute about the ownership of shares in a cooperative apartment because such disputes do not affect "the title to, or the possession, use or enjoyment of real property," as required by CPLR 6501. Consequently, the notice of pendency must be cancelled.

## STATEMENT OF RELEVANT FACTS

Although the facts pleaded in a complaint are presumed to be true on a motion to dismiss, it is well established that "allegations consisting of bare legal conclusions, as well as factual claims

2

either inherently incredible or flatly contradicted by documentary evidence are not entitled to such consideration." *Mark Hampton, Inc. v. Bergreen*, 173 A.D.2d 220, 220 (1st Dep't 1991) (*quoting Roberts v. Pollack*, 92 A.D.2d 440, 444 (1st Dep't 1983)).

Defendants are therefore entitled to rely upon the provisions of the documents referenced by Plaintiff in the Complaint on this motion to dismiss pursuant to CPLR 3211(a)(1) and (7). *See, e.g., WFB Telecomms., Inc. v. NYNEX Corp.*, 188 A.D.2d 257, 259 (1st Dep't 1992). "[T]he court [i]s not required to accept factual allegations that are contradicted by documentary evidence, or legal conclusions that are unsupportable in the face of undisputed facts." *Zanett Lombardier, Ltd. v Maslow*, 29 A.D.3d 495, 495 (1st Dep't 2006); *see also Parsippany Constr. Co. v Clark Patterson Assocs., P.C.*, 41 A.D.3d 805, 807 (2d Dep't 2007) ("bare legal conclusions and factual claims which are flatly contradicted by the evidence are not presumed to be true on a motion to dismiss for failure to state a cause of action.").

## A. Plaintiffs' Agreement to Sell Their Cooperative Shares of Five Apartments

Plaintiffs are former or current shareholders of HDFC. (¶¶ 11-18). HDFC is a "domestic co-operative corporation whose principal place of business is the State of New York, County of New York." (¶ 20). Due to numerous violations that occurred while some of the Plaintiffs were board member of HDFC, a 7A administrator was appointed to rehabilitate certain conditions affecting the health and safety of the occupants of the buildings. (¶¶ 57, 65).

After the appointment of the 7A administrator, Plaintiffs decided to sell their shares in five apartments to defendant FIA 164 Holdings LLC ("FIA"). ((¶ 68.) Plaintiffs claim that three of the five apartments were sold at a reduced market value because of the financial condition of HDFC and the existence of the 7A administrator, but that FIA and certain other defendants agreed to purchase the shares of the other two apartments for a minimum of $375,000 per apartment after they worked to remove the 7a administrator. (¶¶ 72, 73, 76, 79). Plaintiffs do not point to a written

agreement referencing any these terms. To the contrary, the Contracts for the two apartments clearly state that the price for the two remaining apartment was $168,000 and $169,000 respectively. (*See* Schwalb Aff. Exhibit B). The purchase price was delivered, other than $125,000 which placed in escrow for the two remaining apartments. *See id.* and Schwalb Aff. Exhibit C). The Escrow Agreement expressly states that the "**Escrow Funds shall not be released until Inna Khiterer executes Acris Documents for Apartment #44 and Apartment #32 on behalf of the sellers.**" (*See* Schwalb Aff. Exhibit A to Exhibit C).

### B.     The Alleged Breach and Improper Election

The Complaint asserts that the $125,000 that was escrowed was not intended as consideration for the purchase the two remaining apartments, but was intended as consideration to plaintiff Inna Khiterer ("Inna") for her assistance in removing the 7A administrator. (¶ 84). Plaintiffs claim that the $125,000 was required to be released by December 1, 2014, even though the Escrow Agreement expressly states that the escrowed funds shall not be released until the ACRIS documents for the two remaining apartment are executed. (¶¶ 85-86).

Plaintiffs resigned from the board of HDFC in August 2014. (¶ 92). An election was called in November 2014 and a new board was elected. According to the Complaint, the election is null and void because FIA's votes should not have been counted, shareholders were in arrears and board were elected that were not shareholders of HDFC. (¶¶ 92-108). The Complaint does not state that any demand was made to HDFC regarding the purported improper election or that demand on HDFC would have been futile.

### C.     Current Proceeding and the Notices of Pendency

Plaintiffs commenced this action on or about December 18, 2014. Plaintiffs moved by order to show for injunctive relief. On December 22, 2015, Plaintiffs filed a notice of pendency on the property based on their claims in this action. (*See* Schwalb Aff. Exhibit D). By letter dated

4

March 5, 2015, Defendants informed Plaintiffs' counsel that its filing the notice of pendency was contrary to well-settled Court of Appeals precedent and demanded that the notice of pendency be removed immediately. (*Id.* Exhibit E).

<h2 style="text-align:center">ARGUMENT</h2>

## I. PLAINTIFFS' CLAIMS AGAINST HDFC FAIL BECAUSE NO DEMAND WAS MADE ON HDFC AND THE COMPLAINT DOES NOT ALLEGE THAT DEMAND WAS FUTILE

On behalf of all of the shareholders of HDFC, Plaintiffs seek a declaratory judgment that recent HDFC elections are null and void (e.g., the fifth cause of action) and that HDFC should be enjoined from carrying out any actions in light of the improper election (e.g., the seventh cause of action). These are the only causes of action asserted against HDFC, but both claims must be dismissed because Plaintiffs fail to allege that demand was made on HDFC or that demand would have been futile.

A complaint asserting a derivative cause of action against a corporation must "set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the board or the reasons for not making such effort." N.Y. Business Corporations Law § 626; *Najjar Group, LLC v West 56th Hotel LLC*, 110 A.D.3d 638, 639 (1st Dep't 2013); *Brewster v. Lacy*, 24 A.D.3d 136 (1st Dep't 2005) (affirming dismissal of shareholder's suit). This requirement applies to shareholders of a "Housing Development Fund Corporation," such as Plaintiff. *See Benavides v. Hauze*, Index No. 602078/2008, at 2 n.1 (N.Y. County March 19, 2009) (attached as Exhibit F to the Schwalb Aff.).

The Complaint here does not allege that Plaintiffs made demand of HDFC, let alone with the "particularity" New York law requires. *See Kenney v Immelt*, 41 Misc. 3d 1225(A) (Sup. Ct., N.Y. County 2013) ("a plaintiff must plead with particularity not only that a demand was made, but also that the refusal of the demand was wrongful."). Nor does it allege that such efforts would

have been futile. *See Griffith v. Med. Quadrangle, Inc.*, 5 A.D.3d 151, 152 (1st Dep't 2004). Accordingly, the Complaint must be dismissed.

## II.     THE NOTICE OF PENDENCY MUST BE VACATED

Plaintiffs' claim that it is entitled to the five apartments is predicated on an oral agreement that is contradicted by (a) the Contracts, which state that the purchase price for the two remaining apartments was $168,000 and $169,000 respectively; and (b) the Escrow Agreement, which states that Inna was required to execute the ACRIS documents for the two remaining apartments in exchange for the release of the $125,000 in escrowed funds. Moreover, an oral agreement relating to ownership of shares in a cooperative apartment fails as a matter of law because it is barred under the Statute of Frauds. *See Weizmann Institute*, 36 A.D.3d at 420; *Lebowitz*, 100 A.D.2d at 817; *Alayoff*, 112 A.D.3d at 564. Because Plaintiffs have not stated a viable claim against defendants, the notice of pendency should be vacated.

However, even assuming arguendo that Plaintiffs' claims are able to survive a motion to dismiss, the notices of pendency must nevertheless be vacated. Under CPLR 6501, a notice of pendency may only be filed in an action "in which the judgment demanded would affect the title to, or the possession, use or enjoyment of real property." The Court of Appeals has held that because notices of pendency "retard the alienability of real property without any prior judicial review" the Court must give "a narrow interpretation in reviewing whether an action is one affecting 'the title to, or the possession, use or enjoyment of real property.'" *5303 Realty Corp. v. O&Y Equity Corp.*, 64 N.Y.2d 313, 320-21 (1984) (ordering cancellation of a notice of pendency). Thus, "[t]he courts have been frequently confronted by at-tempts to file a notice of pendency in controversies that more or less referred to real property, but which did not necessarily seek to directly affect title to or possession of the land. In the absence of this direct relationship, the remedy was denied." *Id.* at 321. *See also In re Sakow*, 97 N.Y.2d 436, 440 (2002).

Consequently, courts strictly construe CPLR 6501 and routinely cancel notices of pendency in actions that involve disputes over the ownership of shares in a cooperative apartment, such as this one. *See, e.g., Savasta v. Duffy*, 257 A.D.2d 435, 436 (1st Dep't 1999) (holding that notice of pendency is improper in an action arising from a dispute over ownership of stock in a cooperative apartment because such claim represented an interest in personal property); *Spitzer v. Ferran*, 2007 WL 2174813 (Sup. Ct. June 5, 2007) ("the notice of pendency filed against the cooperative apartment must be vacated. Shares constituting ownership of a cooperative apartment and a proprietary lease are chattel real or personalty, not realty"); *Club Ventures II, LLC v. Marks*, 2005 WL 5959960, at *3 n.2 (Sup. Ct. June 30, 2005) ("'shares in a cooperative apartment are personal and not real property' and are not subject to the filing of a notice of pendency").

As Plaintiffs' notice of pendency is based on its claim to cooperative shares in HDFC, the notice of pendency should be vacated.

**III.    HDFC'S COSTS AND LEGAL FEES SHOULD BE AWARDED UNDER 6514(C)**

CPLR 6514(c) provides that the court "in an order canceling a notice of pendency under this section, may direct the plaintiff to pay any costs and expenses occasioned by the filing and cancellation, in addition to any costs of the action." To be entitled to costs, a defendant need not show that the plaintiff maliciously filed the notice of pendency or prosecuted the action in bad faith. *See Lunney & Crocco v. Wolfe*, 180 A.D.2d 472 (1st Dep't 1992); *Dermot Co., Inc. v 200 Haven Co.*, 73 A.D.3d 653, 654 (1st Dep't 2010).

Here, Plaintiffs' filing of a notice of pendency against the property was without legal basis. Defendants sent a letter to Plaintiffs' attorney requesting that the notice of pendency be removed and cited the long line of applicable case law. Plaintiffs did not respond or remove the notice of pendency, necessitating this motion. Courts frequently order the payment of costs and attorney's fees in these circumstances. *See W25 Holdings, LLC v. Schreiber*, 2014 WL 6471481, at *4 (Sup.

Ct. Nov. 19, 2014) (awarding fees where plaintiff did not remove notice of pendency despite receiving letter from defendant); *Chelsea West 23rd Street LLC v. 128 West 23rd Street, LLC*, 2014 WL 2932591 (Sup. Ct. June 26, 2014) (ordering payment of legal fees incurred)

As the CPLR provides for the award of costs and attorney's fees, under these circumstances, such an award is appropriate. *See id.*

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint against the HDFC, cancel the notice of pendency and award HDFC its costs and attorney's fees incurred in moving to cancel the notice of pendency.

Dated: New York, New York
      March 9, 2015

KOFFSKY SCHWALB, LLC

By:  /s/ Efrem Schwalb
      Efrem Schwalb
      349 Fifth Avenue, Suite 733
      New York, New York 10016
      (646) 553-1590

      *Attorneys for Defendant 440 West*
      *164th Street HDFC*

EXHIBIT "F"

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____O. PETER SHERWOOD_____          PART __49__
                              *Justice*

LOTHAR KROLL, *et al.*,

|                          |                |                    |
|--------------------------|----------------|--------------------|
|             Plaintiff,   | INDEX NO.      | 653885/2014        |
|                          | MOTION DATE    | March 9, 2015      |
|           -against-      |                |                    |
| 440 WEST 164TH STREET HDFC , *et al.*, | MOTION SEQ. NO. | 001 |
|                          | MOTION CAL. NO.|                    |
|             Defendants.  |                |                    |

The following papers, numbered 1 to _____ were read on this motion _for a preliminary injunction_.

|                                                                  | PAPERS NUMBERED |
|------------------------------------------------------------------|-----------------|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____   |
| Answering Affidavits — Exhibits _____ | _____   |
| Replying Affidavits _____ |                 |

Cross-Motion:  ☐ Yes  ☑ No

> Upon the foregoing papers, it is ordered that this motion for a preliminary injunction is decided in accordance with the accompanying decision and order.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: _____April 15, 2015_____

O. PETER SHERWOOD, *J.S.C.*

Check one:        ☐ FINAL DISPOSITION   ☑ NON-FINAL DISPOSITION
Check if appropriate:        ☐ DO NOT POST        ☐ REFERENCE
                    ☐ SUBMIT ORDER/ JUDG.        ☐ SETTLE ORDER/ JUDG.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49
-------------------------------------------------------------------X

LOTHAR KROLL, INNA KHITERER,
SERGEI LEONTEV, ANDREAS KROLL,
individually and derivatively as shareholders of
440 WEST 164th STREET HDFC,

                                        **DECISION AND ORDER**

              **Plaintiffs,**

       -against-                           **Index No.: 653885/2014**
                                            **Mot. Seq. No. 001**

440 WEST 164th STREET HDFC; FIA 164th ST
HOLDINGS LLC a/k/a FIA 164th HOLDINGS LLC;
SAC 492071714, LLC; MARK SCHWARTZ;
DAVID GOLDWASSER; RIVERSIDE
ABSTRACT, LLC; CITY OF NEW YORK,

              **Defendants.**
-------------------------------------------------------------------X

O. PETER SHERWOOD, J.:

      In this motion sequence number 001, plaintiffs move by order to show cause for a panoply of injunctive relief. Defendant Riverside Abstract, LLC ("Riverside") cross-moves to dismiss the complaint as against it. On March 9, 2015, the court denied the motion for a preliminary injunction and advised the parties that a written decision would be issued. This Decision and Order is that decision.

                                    *Background*

      This action arises from a transaction for the sale of shares in a cooperative building corporation (defendant or the "HDFC") appurtenant to certain apartments in a building located at 440 West 164th Street in New York City (the "Building"). The HDFC has operated and maintained the Building since it assumed ownership in 1982. However, because of financial difficulties arising from the alleged failure of certain residents to pay rent and the need to make repairs to the Building, the HDFC was unable to pay its real estate taxes. As a result, the City of New York filed a tax lien on the Building and commenced a foreclosure action. In an attempt to raise funds to make needed repairs, plaintiff Inna Khiterer secured a loan for $150,000 (the "Shanghai Note") from Shanghai Holdings LLC ("Shanghai") secured by a mortgage on the Building (the "Shanghai Mortgage"). Nonetheless, due to the physical deterioration of the Building, Ms. Gloria Hopson was appointed as

administrator for the Building pursuant to article 7A of the New York State Real Property Actions and Proceedings law.

Plaintiffs had owned shares in the HDFC and resided in apartments in the Building. Specifically, plaintiffs Lothar Kroll, Andreas Kroll, Inna Khiterer and Sergei Leontev and non-party Mitchell St. Clair owned the shares to apartments 1, 31, 32, 44 and 42 respectively. After appointment of the administrator, these individuals decided to sell their shares in the HDFC. To that end, plaintiffs and St. Clair entered into negotiations with defendants Schwartz and Goldwasser. Schwartz agreed to purchase the shares in the HDFC appurtenant to the five apartments and formed defendant FIA 164 Holdings LLC ("FIA") for that purpose. Goldwasser agreed to purchase the Shanghai Note and Mortgage. He formed defendant SAC4902071714 LLC ("SAC") as the entity that would acquire the Shanghai Note and Mortgage.

Plaintiffs allege that the proposed transaction was to occur in two stages. First, FIA would purchase the shares relating to apartments 1, 31, and 42, and SAC would purchase the Shanghai Note and Mortgage. The shares, and Shanghai Note and Mortgage would be held in escrow by defendant Riverside Abstract LLC ("Riverside") pursuant to an escrow agreement pending completion of a second stage. In stage two, Schwartz, Goldwasser, FIA, and SAC would make funds available to the HDFC so that it could satisfy the tax debt, remove the tax lien, and make the repairs necessary to remove the Article 7A administrator. Thereafter FIA would purchase the shares relating to apartments 32 and 44, which were expected to have a higher market value (due to the removal of the tax lien and repairs to the Building). Plaintiffs allege that none of the shares relating to the apartments would be released to defendants until after the second stage was completed.

Plaintiffs allege that in accordance with this structure, FIA and SAC deposited $125,000 in escrow with Riverside. Pursuant to the terms of the escrow agreement, the deposit was to be released to plaintiffs at the earlier of the removal of the Article 7A administrator or December 1, 2014, but it was not. Moreover, defendants never completed stage two of the transaction. Plaintiffs also contend that they resigned their positions on the board of the HDFC in light of their agreement to sell their shares. Thereafter, the HDFC noticed and held a special board meeting to elect a new board. Defendants Schwartz and FIA allegedly fraudulently induced plaintiffs to provide proxies to vote their shares at the election. In fact Schwartz and FIA voted the shares and Schwartz was

2

elected to the board. Plaintiffs further allege that the election was tainted as family members of shareholders voted their relative's shares at the meeting, and shareholders who were more than two months in rental arrears voted despite a provision in the HDFC's bylaws disqualifying such shareholders from voting.

Based on the foregoing, plaintiffs commenced this action and simultaneously moved by order to show cause for interim injunctive relief as follows:

(1) enjoining FIA and Schwartz from holding themselves out as shareholders or owners of apartments #31, 42 and 1, collecting any rents for those units, or in any way encumbering, transferring, or entering into any agreements with respect to those shares;

(2) enjoining SAC, Goldwasser and Schwartz from assigning, encumbering or entering into any agreements with regard to the Property, declaring a default on the Shanghai Note, or exercising any rights pursuant to the Shanghai Mortgage;

(3) enjoining the HDFC , FIA, and Schwartz from representing or binding the HDFC to any agreements;

(4) enjoining FIA and Schwartz from encumbering, disposing or transferring the shares of apartments #31, 1 and 42;

(5) directing Riverside to release the $125,000 being held in escrow to plaintiff Inna Khiterer;

(6) enjoining the City of New York from conducting a foreclosure sale on or transferring title to the property;

(7) enjoining FIA, Schwartz, and the board members of the HDFC from noticing any shareholder meetings;

(8) directing SAC, Goldwasser and Schwartz to deposit with the court the amount of funds necessary to repair the property;

(9) permitting plaintiffs "derivatively to place a bond to satisfy the outstanding tax lien held by the City of New York for the property or undertaking for the tax lien to remove it from the property";

(10) directing SAC and Schwartz to specifically perform on the agreement, including making all outstanding payments on the agreement and being responsible for all future payments; and

(11) enjoining SAC, and Goldwasser from transferring, assigning, pledging or selling the Shanghai Mortgage.

By stipulation of discontinuance dated February 9, 2015, the City of New York was dismissed as a defendant. By cross motion noticed on February 20, 2015, Riverside moved to be dismissed from the action. All other defendants have appeared and submitted opposition to the motion. On March 31, 2015, the HDFC filed for bankruptcy in the Southern District of New York.

3

Accordingly, on April 6, 2015, the Court issued an order staying this action as to the HDFC, but severed and continued the action as to the remaining defendant's. For the following reasons, the application for injunctive relief was denied on the record of the March 9th hearing, and Riverside's cross-motion to dismiss is granted.

***Discussion***

### A. Plaintiffs' Order to Show Cause

The issuance of a preliminary injunction is governed by CPLR 6301, which provides, in pertinent part:

> A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiffs rights respecting the subject of the action, and tending to render the judgment ineffectual . . . .

"The party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor" (*Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d 839, 840 [2005]). "The decision to grant or deny provisional relief, which requires the court to weigh a variety of factors, is a matter ordinarily committed to the sound discretion of the lower courts" (*id.*).

Given the breadth of the injunctive relief sought, plaintiffs seek through this order to show cause all of the ultimate relief they seek in this action. "It is settled that absent extraordinary circumstances, a preliminary injunction will not issue where to do so would grant the movant the ultimate relief to which he or she would be entitled in a final judgment" (*SHS Baisley, LLC v Res Land, Inc.*, 18 AD3d 727, 728 [2d Dept 2005]). Such extraordinary circumstances are not present here. Accordingly, plaintiffs' motion must fail. Moreover, because the plaintiffs have not satisfied the requirements for issuance of a preliminary injunction, the motion must be denied.

### 1. Probability of Success on the Merits

Plaintiffs assert causes of action for breach of contract, specific performance, fraud, declaratory judgment, fraudulent conveyances, rescission, and permanent injunctive relief. Plaintiffs make four arguments in support of the claim that they have demonstrated a probability of succeeding on the merits: (1) "[p]laintiffs have set forth sufficient proof that FIA and Schwartz breached their purchase agreement and engaged in fraud and collusion since they have not purchased the Stage Two

4

apartments at market value" (Mantia aff, NYSCEF Doc. No. 12, ¶ 54); (2) the "unambiguous terms of the escrow agreement require release of the $125,000 to Khiterer since the maturity date of December 1, 2014 has passed" (*id.* ¶ 55); (3) "the election of November 10, 2014 was not proper since delinquent shareholders were allowed to vote and be elected to the board, contrary to the bylaws" and non-shareholders were allowed to vote (*id.* ¶¶ 56-57); and (4) "the fact that the building continues to deteriorate and is not closer on removing the 7A [administrator] and failing to defend a tax lien foreclosure which could result in the sale of the building . . . pretty well establishes a breach of fiduciary duty" (*id.* ¶ 58). None of these arguments are persuasive.

Plaintiffs' first argument relates to the claims of breach of contract and fraud. "It is basic law, however, that injunctive relief may not be ordered to secure recovery in what amounts to a breach of contract action" (*Robjudi Corp. v Quality Controlled Products, Ltd.*, 111 A.D.2d 156, 157 [1985] [Titone, J. dissenting]; *see Halmar Distribs. v Approved Mfg. Corp.*, 49 AD2d 841, 841 [1st Dept 1975]). "The reason, of course, is that plaintiff has an adequate remedy at law, a remedy which is not made inadequate because the alleged insolvency of the corporate defendant may render a subsequent judgment unenforceable" (*Robjudi Corp.*, 111 AD2d at 157). Indeed, "[i]t is the ability to bring an action at law and recover judgment that determines the adequacy of the legal remedy, not the ability to collect on the judgment" (*id.*). As to the fraud claim, it is duplicative of the breach of contract claim and therefore must be dismissed (*see Manas v VMS Assoc., LLC*, 53 AD3d 451, 453 [1st Dept 2008] ["the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract"]). In any event, and as will be discussed below, monetary damages represents a fully adequate manner of compensating plaintiffs should they succeed on these claims. For the reasons plaintiffs' first argument fails.

Plaintiffs' second argument fails because the express terms of the escrow agreement are ambiguous. Exhibit "A" to the Escrow Agreement provides for release of the $125,000 deposit at the earlier of two events, labeled as "A" and "B" (*see* NYSCEF Doc. No. 25, at Riverside 7). Condition A is the removal of the Article 7A administrator, which indisputably has not happened (*see id.*). Condition B requires release of the funds on December 1, 2014, but imposes a further condition that Khiterer or her representative must "present proof of the above stated events to the escrow agent" (*see id.*). It could be argued that this further condition is a sub-condition to condition "B", and if so, obscures to what "proof" it is referring. In any event, monetary damages represents

a fully adequate manner of compensating plaintiffs should they succeed on their claims.

Plaintiffs' third argument fails because they have offered no evidence that any shareholder voting in the special election was not eligible to do so. Plaintiffs contend that shareholders who were in arrears on their rent, and non-shareholder relatives of shareholders were improperly allowed to vote. These allegations are not supported by evidence. Although plaintiffs' reply papers purport to attach rent records as exhibit "D", no document is attached to the reply affirmation as exhibit D.

Plaintiffs also contend that the continued deterioration of the building and failure of defendants to take action to remove the Article 7A administrator and defend the tax foreclosure action "pretty well establishes a breach of fiduciary duty" (Mantia aff, NYSCEF Doc. No. 12, ¶ 58). Apart from the fact that a claim for breach of fiduciary duty is not pleaded in the complaint, this argument simply asserts that defendants have not held up their end of the bargain with regard to the sale of the plaintiffs' shares in the HDFC. As such, the argument merely relates to the breach of contract claims, as to which injunctive relief may not be granted in this case.

Further, the complaint does not allege that plaintiffs made a demand on the cooperative board before bringing suit themselves, or that doing so would necessarily be futile. Thus, plaintiffs failed to demonstrate a likelihood of success on those claims that they purport to bring derivatively. In their reply affirmation plaintiffs argue for the first time that making a demand on the board would be futile (*see* Mantia reply aff, ¶ 8). Plaintiffs' position is that because shareholders who were in arrears in their rent were improperly allowed to vote in the special election following plaintiffs' resignation from the board, the special election was invalid because there was no quorum present. Thus, according to plaintiffs, "there is no present board of the co-operative" (*see* Mantia reply aff, ¶63). Despite the fact that plaintiffs improperly raised this argument for the first time in reply, it fails for the additional reason that plaintiffs have provided no evidence that those shareholders voting in the special election were not entitled to do so. Accordingly, plaintiffs have not demonstrated a likelihood of success on the merits as to any of the claims they purport to bring derivatively.

Finally, defendants contend that they have in fact paid plaintiffs all of the money owed them under the contracts for sale of all of the apartments, and that plaintiffs in fact have acknowledged receipt of those funds (*see* Carponter aff, NYSCEF Doc. No. 27, ¶¶14-15). Plaintiffs do not dispute this allegation.

6

### 2. Danger of Irreparable Harm

Plaintiffs have also failed to demonstrate a danger of irreparable harm. Plaintiffs have not shown any harm that could befall them that would not be compensable through an award of money damages. For example, plaintiffs contend that "plaintiffs will have transferred their interest in the Stage One apartments to [defendants] for reduced market value without having received the offsetting consideration at market value for the Stage Two apartments" (Mantia aff, ¶ 60). This is a harm that is compensable through an award of monetary damages. Similarly, plaintiffs contend that "Khiterer will suffer irreparable harm it she does not receive the funds to which she is unconditionally entitled pursuant to expressed provision of Escrow Agreement" (*id.* ¶ 61). Even accepting this contention as true, the alleged harm is entirely compensable through an award of money damages. Third, plaintiffs argue that if the Building is foreclosed upon and sold pursuant to the City of New York's tax lien, all of the shareholders in the cooperative will lose the equity in their apartments. Again, such harm is compensable in money damages. Lastly, plaintiffs allege that allowing "improperly elected directors to run the HDFC . . . would be disastrous for the HDFC" (Mantia aff, ¶ 64). This statement is conclusory and unsubstantiated as discussed above. Indeed, despite a multiplicity of causes of action alleged, this action is at bottom merely one for breach of an agreement to purchase plaintiffs' shares in the HDFC. Any harm flowing from that breach is compensable in money damages.

### 3. Balance of the Equities

Because plaintiffs have failed to carry their burden on the first two prongs, the court need not consider whether the balance the equities weigh decisively in plaintiffs' favor. Nonetheless, even if the court were to conduct such an analysis, plaintiffs have failed to meet their burden. Plaintiffs argue that "the building should remain a cooperative" and that defendants should not be permitted to "receive a windfall" (Mantia aff, ¶¶ 66-73). Plaintiff Khiterer was president of the board at the time the tax lien was placed on the Building. As a result, it is disingenuous for plaintiffs to contend that the state of the Building's finances including the impending foreclosure action is due to the defendants' actions or inactions.

### B. Riverside's Cross-Motion to Dismiss

Riverside cross moves to dismiss on the grounds that (1) it has the contractual and statutory right to deposit the escrow funds into the court and be released from the action; (2) the escrow

agreement forestalls any of the claims asserted against Riverside; and (3) the breach of contract claim fails to state a claim. Finally, Riverside seeks to recover the fees and expenses it has incurred in defending this action. For the following reasons, the cross-motion is due to be granted.

Pursuant to ¶ 3(f) of the escrow agreement, Riverside has the right to deposit the escrow funds "with a court of competent jurisdiction, and abid[e] by the determination of such Court with respect thereto. In such event, such delivery shall constitute a complete discharge and release of" Riverside (Fleischmann aff, Ex. B, NYSCEF Doc. No. 25). Moreover, CPLR 2601(a) provides that "a party paying money into court pursuant to the direction of the court is discharged thereby from all further liability to the extent of the money so paid in." Accordingly, Riverside may deposit the funds into the Court and be released from this action. Once it has done so, plaintiffs will have no claim for damages against Riverside. Indeed, the escrow agreement specifically provides that Riverside shall not be liable for any error in judgment for any action taken or omitted except for acts or omissions that constitute willful misconduct or gross negligence (*see id.*, ¶ 3[d]). Plaintiff has not alleged that Riverside has engaged in acts or omissions rising to that level. Accordingly, once Riverside deposits the money into the court, it shall be dismissed from this action.

Lastly, Riverside is entitled to recover fees and expenses incurred in defending this action. Pursuant to ¶3(i) of the escrow agreement, FIA and Khiterer agreed to jointly and severally "defend, indemnify and hold [Riverside] harmless against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrow Agents' duties hereunder" (*id.*, ¶ 3[i]). Thus, Riverside is entitled to its fees and expenses from Khiterer and FIA jointly and severally.

Accordingly, it is hereby

**ORDERED** that plaintiffs motion for a preliminary injunction is DENIED; and it is further

**ORDERED** that the cross-motion of Riverside to dismiss the complaint as to it is GRANTED; and it is further

**ORDERED** that the portion of Riverside's claim that seeks the recovery of attorney's fees is severed and the issue of the amount of reasonable attorney's fees Riverside may recover against the plaintiffs and FIA is referred to a Special Referee to hear and report; and it is further

**ORDERED** that counsel for the plaintiff shall, within thirty (30) days from the date of this

order, serve a copy of this order with notice of entry, together with a completed Information Sheet[1], upon the Special Referee Clerk in the General Clerk's Office (Room 119M), who is directed to place this matter on the calendar of the Special Referee's Part for the earliest convenient date.

This constitutes the decision and order of the court.

DATED:    April 15, 2015

ENTER,

O. PETER SHERWOOD
J.S.C.  4/15/15

---

[1]Copies are available in Room 119M at 60 Centre Street and on the Court's website at www.nycourts.gov/supctmanh under the "References" section of the "Courthouse Procedures" link).